

**NUMBER 13-05-368-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**GREGORY STEWART JOHNSTON,** **Appellant,**

**v.**

**CHARLES T. SMITH,** **Appellee.**

---

**On appeal from the 267th District Court of Refugio County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Rodriguez, Vela, and Wittig[1]**
**Memorandum Opinion by Justice Wittig**

Appellant, Gregory Stewart Johnston, made a claim for injuries resulting from an

attack by a stallion owned by appellee, Charles T. Smith. The claim was based upon

statutory negligence because Smith failed to carry workers' compensation. The jury

---

[1]Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by Chief Justice of the Supreme Court of Texas pursuant to the government code. TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

answered all questions in Smith's favor. Smith previously had won a summary judgment under the Equine Activity Act, which was reversed and remanded by this Court in *Johnston v. Smith*, 88 S.W.3d 729 (Tex. App.–Corpus Christi, 2002, no pet.). We affirm the judgment of the trial court.

In four issues, Johnston challenges the introduction of contributory negligence evidence, charge error for failing to include his statutory theory, introduction of expert testimony not based upon specific facts, and introduction of expert testimony about retrograde extrapolation. We will address his issues in order.

## 1. Background

Johnston worked on Smith's ranch in Refugio County in 1993, was fired, then rehired in 1998. During Johnston's absence from the ranch, the stallion, named Island Born, purportedly became unusually aggressive, unbeknownst to Johnston. While working with the horse, Island Born bit Johnston's face and kicked him, causing severe injuries. The parties stipulated to over $60,000 in reasonable medical costs.

According to Smith, Johnston was an alcoholic who abused the stallion and caused his own injuries.[2] Smith also argued, and the trial court agreed, that the claims were to be tried under the equine statute and not under workers' compensation law. *See* TEX. CIV. PRAC. & REM. CODE § 87.002 (Vernon 2005) (delineating liability under Equine Activity Act); TEX. LABOR CODE § 406.033(a)(Vernon 2004) (delineating liability under workers compensation law). The trial court evidently based his holding upon our decision in *Johnston*, where, in dicta, we stated that Johnston was an independent contractor.

---

[2] Neither party argues sole cause.

*Johnston*, 88 S.W.3d at 730. We went on to hold that Johnston worked in equine activity and was covered by the act. *Id*. at 731. We reversed the summary judgment based upon the equine statute because there was a fact issue concerning one of the exceptions to immunity under the equine statute. *Id.* at 733.

During the jury trial, the trial court refused a considerable amount of proof showing Johnston to be an employee, including deposition testimony and exhibits from Smith's bookkeeper, accountant, and office manager. Johnston himself testified that he was an employee.

### 2. Contributory Negligence/Courts Charge

Johnston argues that the trial court erred in allowing evidence of contributory negligence in his statutory workers' compensation claim. We will assume, without deciding, that Johnston is correct, that in general, evidence of contributory negligence is not admissible in a non-subscriber, workers' compensation case. The labor code, section 406.033, the current version of the penalty statute, discourages employers from opting out of workers' compensation insurance by prohibiting a nonsubscriber from asserting that its employee was contributorily negligent, assumed the risk, or that a fellow employee's negligence caused the employee's injuries. *Kroger Co. v. Keng*, 23 S.W.3d 347, 350 (Tex. 2000) (citing TEX. LABOR CODE § 406.033(a)). However, section 406.033 also identifies the defenses that implicate the employee's conduct and on which a nonsubscribing employer may rely: the employee intended to bring about the injury, or the injury occurred while the employee was intoxicated. *Id.* (citing § 406.033(c)). Accordingly, we hold it was not error for the trial court to allow evidence of Johnston's intoxication.

We are left with the question of contributory negligence. Among other arguments,

3

Smith maintains that he is not required to carry workers' compensation insurance because he is exempt. In that case, evidence of contributory negligence would be admissible. At the time of Johnston's incident, appellee claims that Smith only employed two farm or ranch workers. Section 406.162 states:

> SCOPE. (a) This subtitle applies to an action to recover damages for personal injuries or death sustained by a farm or ranch employee who is:
>
> * * *
>
> (3) an employee, other than a migrant or seasonal worker:
>
> * * *
> (B) for 1991 and subsequent years, employed by a person:
>
> (i) with a gross annual payroll in an amount required for coverage of seasonal workers under Subdivision (2)(B); or
>
> (ii) who employs three or more farm or ranch employees other than migrant or seasonal workers.

TEX. LABOR CODE ANN. § 406.162 (Vernon 2004).

Appellee does not address whether or not Johnston may have come under section 406.162 (3)(B)(i). Further, an employer is generally defined as a person who employs one or more employees. TEX. LABOR CODE ANN. § 406.001; *see Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 137 (Tex. 2003). *Cf.* TEX. LABOR CODE § 406.091 (Vernon 2004) (farm or ranch employees are exempt employees except as provided by subchapter "H" of the labor code). Furthermore, a page of Smith's general ledger indicates payments to three or more individuals, including Johnston, calling them "contract labor." Therefore, we reject this argument by appellee.

### 3. Law of the Case

Probably the most difficult issue facing the trial judge was the effect of our earlier

4

decision in *Johnston*. *See Johnston*, 88 S.W.3d at 733. There, we addressed the appeal of a summary judgment that applied the equine statute as a bar to the negligence claim of Johnston. *Id.* Our opinion summarized the four issues and we treated them as one general point of error. In the primary thrust of our opinion, we discussed that the equine statute was not limited to "public facilities," as Johnston argued, whether Johnston was a participant in equine activity, the inherent risk of equine activity, and an exception to immunity under the equine statute. *Id.* at 732-33. An exception to liability disallows immunity if Smith "did not make a reasonable and prudent effort to determine the ability of the participant to engage safely in the equine activity." *Id.* at 733 (citing TEX. CIV. PRAC. & REM. CODE § 87.004(2)). Ultimately, we held that a fact issue precluded summary judgment on this theory because there was a question whether Smith made a reasonable and prudent effort to determine the ability to engage safely in the activity.[3] We did not discuss whether or not Johnston was an employee, and whether or not the equine statute trumped workers' compensation law. *Id.* at 729-33. *Cf. Dodge v. Durdin*, 187 S.W.3d 523, 530 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (holding that equine statute lacks specific language to limit an employee's workers' compensation rights against his employer).

The law of the case doctrine provides that the decision of a court of last resort on a question of law will govern a case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628 (Tex. 1986); *Harris County v. Walsweer*, 930 S.W.2d 659, 663-64 (Tex. App.–Houston [1st Dist.] 1996, writ denied). However, a decision on an issue before an intermediate appellate court does not absolutely bar re-consideration of the

---

[3] The trial court submitted this issue as a fact question to be determined by the jury.

5

same issue on a second appeal. *Briscoe v. Goodmark Corp*., 102 S.W.3d 714, 716 (Tex. 2003). The application of the doctrine lies within the discretion of the court, depending on the particular circumstances surrounding that case. *Id.* For example, if an appellate court's original decision is "clearly erroneous," the subsequent court is not required to adhere to the original ruling. *Id.*

The doctrine only applies to questions of law and does not apply to questions of fact. *Barrows v. Ezer*, 624 S.W.2d 613, 617 (Tex. App.–Houston [14th Dist.] 1981, no writ); *Kropp v. Prather*, 526 S.W.2d 283, 285 (Tex. Civ. App.–Tyler 1975, writ ref'd n.r.e.) *Missouri K. & T. Ry. Co. v. Redus*, 55 Tex. Civ. App. 205, 208, 118 S.W. 208, 210 (Tex. Civ. App.–Dallas 1909, writ ref'd). Further, the doctrine does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved on the first trial. *Barrows*, 624 S.W.2d at 617; *Kropp*, 526 S.W.2d at 285; *Ralph Williams Gulfgate Chrysler Plymouth, Inc. v. State,* 466 S.W.2d 639 (Tex. Civ. App. –Houston [14th Dist.] 1971, writ ref'd n.r.e.). In a second trial or proceeding, one or both of the parties may amend their pleadings, and the issues or facts are sufficiently changed so that the law of the case no longer applies. *See Rose v. Baker*, 143 Tex. 202, 183 S.W.2d 438 (1944); *Seydler v. Keuper*, 133 S.W.2d 189, 190 (Tex. Civ. App.–Austin 1939, writ ref'd); *Kropp*, 526 S.W.2d at 286; *see also City of Houston v. Jackson*, 135 S.W.3d 891, 896 (Tex. App.–Houston [1st Dist.] 2004).

When this court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue. *Wall v. East Texas Teachers Credit Union*, 549 S.W.2d 232, 232 (Tex. Civ. App.–Texarkana 1977, writ ref'd);

*see McConnell v. Wall*, 67 Tex. 352, 353, 5 S.W. 681, 681 (1887). In interpreting the mandate of an appellate court, the courts should look not only to the mandate itself, but also to the opinion of the court. *Wells v. Littlefield*, 62 Tex. 28, 30 (1884); *Seale v. Click*, 556 S.W.2d 95, 96 (Tex. Civ. App.–Eastland 1977, writ ref'd n.r.e.). In this regard, courts have observed that "the cases are rare and very exceptional in which this court is warranted in limiting the issues of fact, in reversing and remanding a case where the trial has been by jury; and to authorize such interpretation, it must clearly appear from the decision that it was so intended." *Cole v. Estell*, 6 S.W. 175, 177 (Tex. 1887); *see Price v. Gulf Atlantic Life Ins.*, 621 S.W.2d 185, 187 (Tex. Civ. App.–Texarkana 1981, writ ref'd n.r.e.).

Not only are the cases rare where an appellate court is warranted in limiting the issues of fact on remand, but we must also consider the limitations necessarily placed upon the review of a summary judgment. *See Hudson*, 711 S.W.2d. at 630-31. In the review of summary judgments, appellate courts are limited in their considerations of issues and facts. *Id.* In a summary judgment, neither the movant nor the respondent is required to assert every theory upon which he may recover or defend. When a case is remanded for a trial on the merits, the parties may be different, the pleadings may be different, and other causes of action may have been consolidated. *Id.* (citing *Governing Bd. v. Pannill*, 659 S.W.2d 670, 680-81 (Tex. App.–Beaumont 1983, writ ref'd n.r.e.)). Thus, the context of a summary judgment proceeding is distinguishable from a full trial on the merits. *Id.*

In the initial appeal, Smith's motion for summary judgment arguing that the equine statute applied was reversed and remanded. *Johnston,* 88 S.W.3d. at 733. Johnston's

7

appeal was restricted to this defensive theory. The summary judgment proof, including whether or not Johnston was an employee injured in the course of his employment, was not addressed or considered in our prior opinion. *See id.* Johnston had not even pled the equine statute as a basis of recovery until before the trial on the merits when the trial judge insisted that Johnston amend his pleadings to include this theory.

We find nothing in our opinion or mandate that limited the issues to be considered by the trial court on remand. We conclude this is not one of those rare cases which limited the issues that trial court was to try on remand. *Hudson*, 711 S.W.2d. at 630-31. Accordingly, the trial court erred by allowing evidence of contributory negligence other than intoxication and by not submitting Johnston's statutory workers' compensation negligence claim. *See Dodge*, 187 S.W.3d. at 530. We sustain Johnston's first and second issues, in part.

### 4. Course and Scope

Smith also argues that Johnston was not in the "course and scope" of his employment at the time of his injury. The Texas Labor Code defines this term:

> 'Course and scope of employment' means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations. . . .

TEX. LABOR CODE ANN. § 401.011 (Vernon 2004).

The Texas Supreme Court has held that it is essential that an injury be sustained in the course of employment so as to entitle the employee or his statutory beneficiaries to recover workers' compensation benefits. *Deatherage v. International Ins. Co.*, 615 S.W.2d

8

181, 182 (Tex. 1981) (citing predecessor statute, article 8306, § 1). As a general rule, a claimant must meet two requirements: (1) the injury must have occurred while the employee was engaged in or about the furtherance of the employer's affairs or business; and (2) the claimant must show that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business or profession. *Id.* (citing article 8309, § 1(4); *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624 (Tex. 1981); *Tex. Emp. Ins. Ass'n v. Page,* 553 S.W.2d 98 (Tex. 1977); *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290 (Tex. 1965); *Tex. Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350 (Tex. 1963)).

Johnston's own testimony shows that he was walking Smith's stallion back from breeding Johnston's own mare. The activity did not have anything to do with furtherance of his employer's business. An employee must establish that the injury was sustained while engaged in or about the furtherance of the employer's affairs or business and that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business, or profession. TEX. LABOR CODE ANN. § 401.011(12) (Vernon 2004) (defining course and scope of employment); *see also Deatherage*, 615 S.W.2d at 181-82 (interpreting definition of course of employment under prior statute). Eye witness testimony also indicated that Johnston was using Smith's stallion to breed his own mare. The jury found that Johnston did not have Smith's's permission to breed Johnston's mare to Island Born. Thus, Johnston was not performing his job for Smith. *See* TEX. LABOR CODE ANN. § 401.011(12) (Vernon 2004). The injury must occur while Johnston was engaged in or about the furtherance of his employer's affairs or business. *Deatherage,* 615 S.W. 2d at 182.

9

Nor does Johnston indicate any objection to jury question five, inquiring whether he had permission to breed his own mare to Smith's stallion. To preserve error in the jury charge, a party must make the trial court aware of his complaint, timely and plainly, and obtain a ruling. *State Dept. of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). A party objecting to a charge must distinctly point out the matter to which he objects and the grounds of his objection. TEX. R. CIV. P. 274; *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex. 1986); *Lone Star Ford v. Hill*, 879 S.W.2d 116, 121 (Tex. App.–Houston [14th Dist.] 1994, no writ). The purpose of rule 274 is to afford trial courts an opportunity to correct errors in the charge. *Castleberry*, 721 S.W.2d at 276. An objecting party must clearly designate error and explain the grounds for complaint. *Id.* An objection not meeting both requirements is properly overruled and does not preserve error on appeal. *Id.* We hold that Johnston waived error, if any, associated with the submission of issue five and is bound by the jury's finding.

Because the jury found that Johnston was acting without permission of his employer, and thus not in or about the furtherance of the employer's affairs or business, we hold that the error of the trial court which we found in issues one and two, did not cause the rendition of an improper judgment, and is therefore harmless. TEX. R. CIV. P. 44.1(a)(1).

### 5. Retrograde Extrapolation

In his issues three and four, Johnston complains the trial court erred by allowing Smith's expert toxicologist's testimony because the opinions were not based on specific facts and her opinions were not reliable. Johnston complains expert, Sheryl Peyton, did

10

not have an adequate factual basis upon which to make her ultimate opinions, applying retrograde extrapolation, concluding that Johnston's blood-alcohol level was between .09 and .15 at the time of the horse attack.

Peyton, formerly a forensic toxicologist for the Texas Department of Public Safety, converted Johnston's serum test result of .64 into a whole blood alcohol test result of .057. The hospital that treated Johnston performed the blood alcohol test at 1950 hours the day of the incident. The trauma flow sheet indicated Johnston was injured between 1700 and 1730 hours. Based on the time of the accident and the time that Johnston's blood was drawn, Peyton opined that Johnston's blood alcohol concentration was greater than .09 at the time of the accident. She indicated the range of blood alcohol concentration was between .09 and .15, given the variability of ethanol elimination and absorption rates. The standard elimination rate is .018 to .02 per hour. However, in individual cases the elimination rate may vary from .015, in a person who drinks very little, to .035 in a person who drinks a lot. Peyton also relied on the medical records for Johnston's size and weight. She further had knowledge of testimony that showed that Johnston was drinking alcohol around noon, although she didn't know what, if anything, he had eaten for lunch. In addition to the medical records including the laboratory analysis, she also relied upon Johnston's deposition testimony.

Johnston stipulated that Peyton was an expert toxicologist and that she had the background to make the mathematical calculations regarding retrograde extrapolation, "assuming she's provided with the adequate information needed to do that."

Expert testimony is admissible if (1) the expert is qualified, and (2) the testimony is relevant and based on a reliable foundation. *Cooper Tire & Rubber Co. v. Mendez*, 204

S.W.3d 797, 800-01 (Tex. 2006) (citing *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995)). "If the expert's scientific evidence is not reliable, it is not evidence." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 713 (Tex. 1997). We review the trial court's determination whether these requirements are met by the abuse of discretion standard. *Wilkins*, 47 S.W.3d at 499. "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *Robinson*, 923 S.W.2d at 558. Admission of expert testimony that does not meet the reliability requirement is an abuse of discretion. *Guadalupe-Blanco River Auth. v. Kraft,* 77 S.W.3d 805, 810 (Tex. 2002).

Johnston stipulated, and we hold, that the expert was qualified. Johnston does not challenge the methodology of retrograde extrapolation per se; rather, his challenge, as stated, is that Peyton simply did not have enough facts upon which to base her conclusions. He cites *Mata v. State*, 46 S.W.3d 902, 916-17 (Tex. Crim. App. 2001). *Mata* discusses some factors in evaluating the reliability of retrograde extrapolation:

> The court evaluating the reliability of a retrograde extrapolation should also consider (a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation. These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat either before, during, or after the drinking.
>
> * * *
>
> In this case, the inconsistencies in McDougall's testimony prevented him from explaining the science to the court with any clarity. Regarding the other

12

factors, there was only one test of Mata's BAC, and it occurred over two hours after the alleged offense. This is a significant length of time and seriously affects the reliability of any extrapolation. Add to that the fact that McDougall did not know one single personal characteristic of Mata - he did not know whether Mata had eaten anything that night and if so, how much; how much Mata had had to drink; what Mata had been drinking; when Mata's last drink was; the length of Mata's drinking spree; or even Mata's weight.

*Id.*

In contrast to McDougall's testimony, Peyton knew and testified to Johnston's weight and gender, that he was drinking at noon on the day in question, and thus the approximate time of his last drink, as well as the duration of the drinking. The actual test was not a breath test but a hospital administered blood alcohol test specifically documented as to time and place. Although Peyton did not know what Johnston had eaten for lunch, she knew some of his personal characteristics, including his drinking habits. Furthermore, Johnston does not point to any inconsistences in the Peyton's testimony. We also note the following language from *Mata* that is applicable here:

We believe that the science of retrograde extrapolation can be reliable in a given case. The expert's ability to apply the science and explain it with clarity to the court is a paramount consideration. In addition, the expert must demonstrate some understanding of the difficulties associated with a retrograde extrapolation. He must demonstrate an awareness of the subtleties of the science and the risks inherent in any extrapolation. Finally, he must be able to clearly and consistently apply the science.

*Id.*

A review of the record indicates Peyton demonstrated ample familiarity with the foundational data, the science, and its application. Her awareness of the subtleties of the science gave rise to her opinion giving a range of intoxication, rather than testifying to some absolute degree of intoxication. In contrast to the *Mata* expert, Peyton's testimony was consistent and demonstrated careful analysis. We also note that *Mata* is otherwise

13

distinguishable because of its criminal law standard of "clear and convincing evidence," which does not apply in the civil context. *See id.*

We agree with Johnston that if an expert relies upon unreliable foundational data, any opinion drawn from that data is likewise unreliable. *Wilkins*, 47 S.W.3d 486, 499 (citing *Havner*, 953 S.W.2d at 714.) However, in this instance, ample data supported the expert's opinion of Johnston's intoxication at the time of his unfortunate incident. Accordingly, we hold the trial court did not abuse its discretion in this case by overruling the objections of Johnston, and allowing both the expert opinion and supporting documents. *See Robinson*, 923 S.W.2d at 558. Johnston's third and fourth issues are overruled.

## 6. Conclusion

The judgment of the trial court is affirmed.

DON WITTIG,
Justice

Memorandum opinion delivered and filed
this the 29th day of May, 2008.

14