**Affirmed and Opinion filed May 31, 2012.**



In The

# Fourteenth Court of Appeals

_____

NO. 14-11-00376-CV
_____

**BRENDA YOUNG, Appellant,**

**V.**

**TISA MCKIM AND JACQUELINE MCKIM, Appellees.**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-24816**

---

## O P I N I O N

This is an appeal from the granting of a traditional motion for summary judgment in favor of the appellees, Tisa and Jacqueline McKim.   We affirm.

I

In August 2009, Tisa McKim went to the Houston SPCA with a friend who was interested in adopting a horse.   One of the horses at the SPCA was named Jasper.   Before the SPCA acquired Jasper, he had been extremely malnourished.   He was still visibly underweight when McKim first saw him at the SPCA.   After leaving the SPCA, McKim

called her daughter Jacqueline, a college student in Nebraska, to ask if she would like to adopt Jasper. Jacqueline —who goes by "Jackie"—said she would. So McKim returned the next day and adopted Jasper.

During the adoption process, the SPCA revealed little about Jasper's past. As McKim acknowledged in her deposition, a horse rescued from mistreatment is "an unknown entity." The SPCA did inform McKim that Jasper's former owner had nearly starved him on two occasions. But the SPCA also reported that since his rescue, Jasper had behaved in a "gentlemanly" manner.

Pursuant to the SPCA's adoption policy, Jasper was gelded before he was turned over to Jackie. He then stayed at the SPCA for about a week to recover from the procedure. Once the SPCA released Jasper, McKim arranged to board him at Ravensway Stables where McKim already boarded another horse named Butch. At Ravensway, Jasper occupied a paddock by himself so that he could eat without competing with other horses for food. Jasper was still 400 to 500 pounds underweight when he arrived at Ravensway. Once he regained his weight, Jasper was placed in a paddock with other horses.

Like McKim, Brenda Young also lived near Ravensway Stables. Young and her teenage son often cared for horses kept at Ravensway, and had posted a flyer at Ravensway advertising their availability to assist owners with the care of their horses. Young began caring for Jasper in November of 2009. At that point, she had worked with about twelve or thirteen horses over the previous five years.

Young occasionally cared for both Jasper and Butch. McKim paid Young $2.50 each time she fed the horses and $3.00 each time she cleaned out the horses' stalls.[1] Because Jasper was recovering from malnourishment, McKim provided very precise

---

[1] While McKim agreed to use Young to take care of the horses, it was not an exclusive arrangement. Other folks also sometimes cared for the horses. McKim used a sign-up sheet to keep track of who was caring for the horses and what they had done.

2

instructions on what to feed him. But beyond requiring that the horses be fed twice a day, she did not specify the exact timing of the feedings. It was also understood that it was up to the person feeding the horses to decide, based on the weather, whether to put the horses out in the paddock or leave them in the barn.

The record shows that both Young and McKim believe that horses that have been mistreated can have "flashbacks" of that mistreatment. According to McKim, these flashbacks can occur without any warning. McKim also testified, without further clarification, that a recently gelded horse's behavior can be somewhat unpredictable.

In her deposition, Young testified that when she started caring for Jasper, he did not appear to have been malnourished. She also testified that aside from the incident made the basis of this case, Jasper never did anything to cause her concern. Young testified that McKim never told her that Jasper had been adopted from the SPCA, was a rescue horse, had been malnourished, or had been recently gelded. According to Young, McKim should have warned her of these facts. Had she known Jasper had been adopted from the SPCA, Young testified she would not have agreed to care for him.

McKim acknowledged in her deposition that she did not "remember having a face-to-face, one-on-one, sole-content conversation about Jasper with [Young]." She likewise did not tell Young that Jasper had been recently gelded. But McKim also testified that it was her "impression everybody knew [Jasper] came from the SPCA." McKim recalled telling "everybody [who] was around him that we didn't know anything about him and we didn't know what kind of temperament . . . he had." McKim also "figured [Young] knew what she was doing" and remembered telling Young to "be careful" and "be on your guard around Jasper for a little while."

On January 3, 2010, under instructions from McKim, Young went to Ravensway to feed Jasper and Butch. Young decided to take him out to paddock. Jasper appeared normal and Young noticed nothing unusual about his behavior. As Young led Jasper, she

3

encountered another boarder at the stable and stopped to talk. While they talked, Jasper grazed beside Young. Then, suddenly, Jasper turned and kicked Young, injuring her.

After Young sued the McKims for negligence, they moved for summary judgment. As their basis, the McKims relied on the version of the Equine Act, chapter 87 of the Texas Civil Practice and Remedies Code, then in effect. *See* Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1108, 2001 Tex. Gen. Laws 2457–2459 (amended 2011) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 87.001 *et seq* (West 2011)). The McKims argued that under the Equine Act, they were immune from liability because Young's alleged injuries arose from risks inherent in an equine activity. The trial court agreed and granted summary judgment in the McKims' favor. This appeal followed.

II

In a single issue Young contends the trial court erred when it granted the McKims' motion for summary judgment based on the protection from liability found in the Equine Act. Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1108, 2001 Tex. Gen. Laws 2458 (amended 2011) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 87.003)).

A

Although the McKims filed both no-evidence and traditional motions for summary judgment, the trial court specifically granted only the traditional motion. In a traditional summary-judgment motion, the movant must show there is no genuine issue of material fact. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If there is no genuine issue of material fact, summary judgment should issue as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001). Once a defendant establishes its right to summary judgment, the burden then shifts to the plaintiff to come forward with summary-judgment evidence raising a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). On appeal, we review the entire summary-judgment record

in the light most favorable to the non-movant. *City of Keller v. Wilson*, 168 S.W.3d 802, 824–25 (Tex. 2005).

B

The Equine Act in effect at the time of the incident underlying this appeal was found where it still resides today—in chapter 87 of the Texas Civil Practice and Remedies Code. Former section 87.003 of the Equine Act provides, in pertinent part:

> Except as provided by Section 87.004, any person . . . is not liable for . . . damages [for personal injury that] results from the dangers or conditions that are an inherent risk of an equine activity . . . , including:
>
> (1) the propensity of an equine . . . animal to behave in ways that may result in personal injury or death to a person on or around it;
>
> (2) the unpredictability of an equine . . . animal's reaction to sound, a sudden movement, or an unfamiliar object, person, or other animal; . . . .

*Loftin v. Lee*, 341 S.W.3d 352, 355 (Tex. 2011) (quoting Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1108, 2001 Tex. Gen. Laws 2458 (amended 2011)). "The statutory text reflects an expansive view of 'inherent risk.'" *Loftin*, 341 S.W.3d at 356.

The Equine Act also provides exceptions to the limitation of liability found in former section 87.003. Former section 87.004 of the Equine Act provides, in pertinent part:

> A person . . . is liable for . . . damage . . . caused by a participant in an equine activity if: . . .
>
> (2) the person provided the equine . . . animal . . . and the person did not make a reasonable and prudent effort to determine the ability of the participant to engage safely in the equine activity . . . and determine the ability of the participant to safely manage the equine animal . . . , taking into account the participant's representations of ability; . . .
>
> (4) the person committed an act or omission with wilful or wanton disregard for the safety of the participant and that act or omission caused the injury. . . .

5

*Id.* (quoting Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1108, 2001 Tex. Gen. Laws 2458–59 (amended 2011) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 87.004)). Section 87.004(2) applies only when the failure to make the required determination is itself the cause of the damage. *Loftin*, 341 S.W.3d at 359. Making a reasonable and prudent effort to determine the ability of a participant to safely engage in an equine activity under section 84.004(2) does not require a formal, searching inquiry by the person providing the equine animal. *Id.*

C

Within her single appellate issue, Young raises five sub-points, which we consolidate into four.

1

In her first sub-point, Young relies on the statement in *Dodge v. Durdin* that "[t]he legislative history . . . suggests that the [l]egislature enacted the Equine Act to limit the liability of equine sponsors to tourists and other consumers of equine activities." *Dodge v. Durdin*, 187 S.W.3d 523, 529 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Based on this, Young argues she was not a participant in an equine activity at the time she was kicked by Jasper because she was not a consumer of equine activities like a tourist engaging in a recreational equine activity. We disagree that only consumers of equine activities qualify as participants in equine activities as defined in the Equine Act.

Resolution of a statutory-construction issue must begin with an analysis of the statute itself. *Fitzgerald v. Advanced Spine Fixation Sys. Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999); *Cail v. Serv. Motors, Inc.*, 660 S.W.2d 814, 815 (Tex. 1983). We must interpret the statute in a manner that gives effect to the plain meaning of the statute's words and effectuates the legislature's intent. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We should read every word, phrase, and expression as if it were deliberately chosen, and presume words excluded from the statute were excluded purposefully. *Ward*

6

*Cnty. Irrigation Dist. No. 1 v. Red Bluff Water Power Control Dist.*, 170 S.W.3d 696, 700 (Tex. App.—El Paso 2005, no pet.). Where the language of the statute is clear and unambiguous, it should be given its common everyday meaning, without resort to rules of statutory construction or extrinsic aids. *Cail*, 660 S.W.2d at 815. Rules of construction and other extrinsic aids may not be used to create an ambiguity in a statute. *Fitzgerald*, 996 S.W.2d at 866.

The Equine Act is a comprehensive limitation of liability for equine activities of all kinds. *Loftin*, 341 S.W.3d at 355. The Equine Act applies to all "participants." *Id.* A "participant" in an equine activity is defined in the statute as "a person who engages in the activity, without regard to whether the person is an amateur or professional or whether the person pays for the activity or participates in the activity for free." Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1108, 2001 Tex. Gen. Laws 2458 (amended 2011) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 87.001(9)). Under the statute, "'engages in an equine activity' means riding, handling, training, driving, assisting in the medical treatment of, being a passenger on, or assisting a participant or sponsor with an equine animal." Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1108, 2001 Tex. Gen. Laws 2458 (amended 2011) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 87.001(1)).

We find nothing in the language of the statute mandating that its limitation of liability applies only to consumer-oriented equine activities. For example, the statute specifically includes as a category "assisting in the medical treatment of" an equine animal. *Id.* This activity does not involve tourists or other consumers of equine activities. In addition, the Corpus Christi court of appeals has determined that an independent contractor leading a horse to a paddock was a participant in an equine activity covered by section 87.003 of the Equine Act. *See Johnson v. Smith*, 88 S.W.3d 729, 732 (Tex. App.—Corpus Christi 2002, no pet.) (holding that the plaintiff was a participant as defined in the statute but also holding that there was a fact issue on whether one of the exceptions found in

section 87.004 of the Equine Act applied).   Because the coverage of the Equine Act is not limited to consumers of equine activities, we overrule Young's first sub-point on appeal.

2

In her second and third sub-points, Young contends the trial court erred in granting the McKims' motion for summary judgment because she was an employee of the McKims, not an independent contractor, and therefore she was not a participant under the Equine Act.   In support of this contention, Young once again relies on the *Dodge* opinion.   In that case, the First Court of Appeals held that an employee covered by the Workers' Compensation Act who was bitten by a horse was not a participant in an equine activity under the Equine Act.   *Dodge*, 187 S.W.3d at 530.   The court reasoned that if an employee were determined to be a participant in an equine activity, it would abrogate employer duties delineated in the Workers' Compensation Act.   *Id.*

The test to determine whether a worker such as Young is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work.   *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002).   An employer controls not merely the end sought to be accomplished, but also the means and the details of its accomplishment.   *Id.* We measure the right to control by considering: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about the final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.   *Id.*

While McKim provided detailed instructions on exactly what to feed Jasper and how often to feed him each day, the details of how and when Young accomplished that task were left up to her.   The decision of whether to place Jasper into a paddock was also left to Young.   Moreover, Young did not care for Jasper on a daily basis, but only on an as-needed basis determined by McKim's schedule.   And Young was not the exclusive

8

person McKim paid to feed Jasper. The summary-judgment evidence shows that McKim paid at least two other people to feed Jasper. Also, the evidence establishes that Young operated a business independent of McKim. Young advertised her business at Ravensway and she provided care for other horses stabled there. Finally, the evidence establishes that McKim paid Young per feeding and stall cleaning, not based on the amount of time Young spent performing those tasks. Applying the right-of-control test, we hold that the summary-judgment evidence conclusively shows that Young was an independent contractor when Jasper kicked her. *See id.* ("Although some of these factors may not, alone, be enough to demonstrate a worker's independent-contractor status, together they provide conclusive summary-judgment evidence that Mathis was an independent contractor and not Limestone's employee when the accident occurred."). We overrule Young's second and third sub-points.[2]

3

In her fourth sub-point, Young contends the trial court erred when it granted the McKims' motion for summary judgment because there are fact issues on the applicability of two of the exceptions to immunity found in former section 87.004 of the Equine Act. We address each contention in turn.

Under former section 87.004(2) of the Equine Act, a person who provides an equine animal has no immunity under former section 87.003 unless he has made:

> a reasonable and prudent effort to determine the ability of the participant to engage safely in the equine activity . . . and determine the ability of the participant to safely manage the equine . . . animal, taking into account the participant's representations of ability.

Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1108, 2001 Tex. Gen. Laws 2458 (amended 2011) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 87.004(2)). Former section

---

[2] In her list of the sub-points contained within her issue on appeal, Young states her second sub-issue as: "None of the cases cited by the [McKims] approved of or involved the granting of a motion for summary judgment." Young does not separately brief this sub-point; therefore, she has waived it. *See* Tex. R. App. P. 38.1(i).

87.004(2) applies only when the failure to make the required determination is itself the cause of the damage. *Loftin*, 341 S.W.3d at 359. Making a reasonable and prudent effort to determine the ability of a participant to safely engage in an equine activity under former section 84.004(2) does not require a formal, searching inquiry by the person providing the equine animal. *Id.* Young asserts that the McKims failed to conclusively establish that a reasonable and prudent effort was made to determine whether she could safely engage in the care of a previously abused or gelded horse.[3]

Here, the summary-judgment evidence establishes that Young was self-employed and operating a part-time business caring for horses stabled at Ravensway. The evidence also establishes that Young had been conducting this business since 2004 and had cared for twelve to thirteen horses on a continuing basis during that time period. In addition, Young posted advertisements at Ravensway that she was available and qualified to assist in the care of horses. Because Young had advertised her business at Ravensway, and held herself out as qualified to care for horses, we hold that former section 87.004(2) does not extinguish the McKims' immunity under former section 87.003. *See Loftin*, 341 S.W.3d at 359 (holding that when the owner of the horse already generally knows the participant's experience level in dealing with horses, former section 87.004(2) does not require a formal, searching inquiry into a participant's ability to safely manage the equine).

Next, Young raises the applicability of former section 87.004(4) of the Equine Act. Under that provision, the act provides no immunity when a defendant commits "an act or omission with wilful or wanton disregard for the safety of the participant and that act or omission cause[s] the injury." Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1108, 2001 Tex.

---

[3] The parties disagree as to which party has the burden of proof on this issue. Young asserts the McKims were required to conclusively prove each element of their Equine Act affirmative defense, including the inapplicability of any of the exceptions found in former section 87.004. Conversely, the McKims assert former section 87.004 is an affirmative defense that places the burden on Young to produce sufficient summary-judgment evidence to raise a fact issue on each element of the defense. Because we conclude the summary-judgment evidence conclusively establishes that the exceptions found in former section 87.004 do not apply, we need not resolve this question.

Gen. Laws 2459 (amended 2011) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 87.004(4)). According to Young, this exception was triggered when McKim failed to inform her that Jasper was a rescue horse that had been mistreated and that he had been gelded several months before the incident. Under the Equine Act, wilful and wanton disregard means "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Little v. Needham*, 236 S.W.3d 328, 334 (Tex. App.—Houston [1st Dist.] 2007, no pet.). It is synonymous with gross negligence. *Id.*

Specifically, Young points to the testimony in the summary-judgment record that horses that have been malnourished in the past can experience "flashbacks" of that treatment. We conclude this evidence is insufficient to create a fact issue on the fourth exception. The record contains no explanation as to what exactly a "flashback" is, particularly as experienced by a horse. Likewise, there is no explanation as to why the potential for such a flashback obligates McKim to reveal that Jasper had previously been malnourished to someone who holds herself out as qualified to care for horses.

Young also argues that McKim should have told her that Jasper had been freshly gelded when McKim adopted him. As Young points out, McKim testified that freshly gelded horses' behavior is sometimes "questionable." But the summary-judgment evidence shows that Jasper was well-behaved both at the SPCA and after McKim adopted by him.

We conclude the summary-judgment evidence does not create a genuine issue of material fact on the exception found in former section 87.004(4). Young has not shown how the McKims' alleged failure to disclose Jasper's previous abuse or that he had been freshly gelded could amount to wilful or wanton disregard for her safety. We overrule Young's fourth sub-point.

11

In her fifth sub-point, Young asserts the trial court erred when it granted summary judgment in favor of the McKims because they failed to prove as a matter of law that they posted the warning signs required by former section 87.005 of the Equine Act.[4]  In response, the McKims contend Young waived this argument on appeal because she did not present it in her summary-judgment response. We agree with the McKims.

To preserve an argument against the granting of a motion for summary judgment for appellate review, the non-movant must expressly present that argument to the trial court within its written response to the motion.  *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  Here, Young did not include in her summary-judgment response any argument that the trial court should deny the McKims' motion because they failed to post the warnings required by former section 87.005 of the Equine Act. Young failed to preserve this issue for appellate review. We overrule Young's fifth sub-point on appeal.

---

[4] Former section 87.005 of the Equine Act provides in pertinent part:

(a)      An equine professional shall post and maintain a sign that contains the warning contained in Subsection (c) if the professional manages or controls a stable, corral, or arena where the professional conducts an equine activity.   The professional must post the sign in a clearly visible location on or near the stable, corral, or arena.

(b)      An equine professional shall include the warning contained in Subsection (c) in every written contract that the professional enters into with a participant for professional services, instruction, or the rental of equipment or tack or an equine animal.   The warning must be included without regard to whether the contract involve equine activities on or off the location or site of the business of the equine professional.   The warning must be clearly readable….

Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1108, 2001 Tex. Gen. Laws 2458 (amended 2011) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 87.005).

* * *

Having overruled each of Young's sub-points brought within her single issue on appeal, we affirm the trial court's final judgment.


/s/  Jeffrey V. Brown
    Justice


Panel consists of Chief Justice Hedges and Justices Brown and Christopher.