

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00063-CV

ELKE CRUMP AND STEVEN MICHAEL PERRY, Appellants

V.

MARGARETE FRENK, Appellee

On Appeal from the County Court at Law #2
Gregg County, Texas
Trial Court No. 2010-2474-CCL2

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

# O P I N I O N

## I.     Background

This case arose due to a dispute between a mother and daughter and centers upon the ownership of a residence once occupied by the mother in White Oak, Gregg County, Texas. In the first step of the controversy, Margarete Frenk executed a general warranty deed in 2005, granting her daughter, Elke Crump, all of her undivided right, title, and interest in and to the residence (the property). About two years later, Frenk attempted to rescind that transaction by filing a suit in an attempt to divest Crump of her rights in the property. The suit was resolved upon the entry of the parties into a settlement agreement, the performance of which by the respective parties is a major matter of controversy in this case. Crump instituted suit and Frenk responded by filing a counter-claim against Crump and cross-claim against Steven Michael Perry (Crump's grandson, who had moved into the house on the property at Crump's request). After the parties filed competing motions for summary judgment, the trial court ruled that Crump had breached the settlement agreement and entered judgment in favor of Frenk against Crump and Perry, prompting the losing parties at trial to appeal. As modified, we affirm the judgment of the trial court.

*(a)     The Settlement Agreement*

The settlement agreement, executed in the summer of 2007,[1] provided that "Crump shall convey a non-transferrable life estate in the property . . . to [Frenk], giving her the right to occupy and enjoy the property, to the exclusion of all others for the remainder of [Frenk's] life."

---

[1]Frenk signed the agreement on June 27, and Crump signed on July 11.

2

In exchange, Frenk specifically obligated herself to maintain hazard insurance on the property, to "protect, preserve, and maintain the residence in a manner consistent with its condition," and to "attend to all issues requiring maintenance or repair as soon as she becomes aware of the problem or condition." Finally, the agreement required Frenk to "take all actions necessary to seek a reversal of the current tax status, invoking the homestead and over-65 exemptions available to her, retroactive to July 18, 2005." It did, however, permit Frenk to "apply for and receive a deferral of the taxes for the remainder of her life."

*(b)      The Correction Deed*

Despite the wording of the settlement agreement, which required Crump to execute and deliver a deed of the life estate interest to Frenk, the parties apparently chose a different tack. Instead, Frenk executed a "Correction General Warranty Deed" on July 26, 2007, as grantor in favor of Crump as grantee. This deed purported to grant the property to Crump, with a reservation from the conveyance "of the full possession, benefit, and use of the Property for the remainder of the life of Grantor, as a life estate. Grantor shall be responsible for all taxes related to the subject property and shall apply for the homestead and over 65 exemptions."[2] Both parties believed the correction deed accomplished the desired result of creating a life estate in favor of Frenk. Attorney Scott Novy (who represented Frenk in the dispute with Crump that gave rise to

---

[2] A "Note Concerning Correction" appears at the end of the deed:

> This deed is being filed again for record as a correction deed to correct certain incorrect information and to substitute for the deed as originally recorded. The following incorrect information is being corrected: the consideration and the reservation of life estate in favor of Grantor. Other than the stated correction, no changes were made in the deed as originally recorded, and the effective date of this correction deed relates back to the effective date of the deed being corrected.

3

the settlement agreement) signed an affidavit which stated, in part, "Upon execution of the Settlement Agreement and Correction Warranty Deed, I believed, and did advise Ms. Frenk, that by execution of these documents, Ms. Frenk obtained a life estate on the property located at 209 E. Driftwood, White Oak, Texas."[3] Both parties apparently having believed that the issues had been fully resolved with the alternative means employed rather than following the dictates of the settlement agreement, Frenk peacefully resided on the property for almost three years after the correction warranty deed was executed.[4]

### (c)    Frenk Abandons the Property

In May 2010, Crump discovered that Frenk had apparently abandoned the occupancy of the house; the yard was unkempt, the garage doors were broken, fencing was in need of repair, and the shrubs were overgrown. Investigating further, Crump learned that Frenk, upon encountering health problems, had moved to nearby Longview in order to live next to her daughter, AnnMarie Price. Frenk had no current plans to return to the property.

Having discovered the property was uninsured, Crump obtained property hazard insurance. Crump also discovered windows in need of replacement, inoperable plumbing in the master bedroom, interior walls which required painting, and "filthy" carpets. Crump paid for the necessary clean-up and repair work and commenced the payment of the regular utility bills.

---

[3]We note that the proper use of a correction deed is narrow in scope and can only be used to correct some facial imperfection in the title, such as to correct a defective description of a single property when a deed recites inaccurate metes and bounds. *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 750 (Tex. 2009).

[4]Frenk paid a total of $1,234.30 in property taxes in the years 2008 and 2009, and $667.03 for the year 2010. Prior to leaving the property in April 2010, Frenk paid $1,496.00 in homeowner's property insurance. After she moved from the property, Frenk paid the sum of $1,788.00 in homeowner's property insurance.

Additionally, Crump asked her grandson, Perry, to move into the property in order to care for and maintain it. Thereafter, Frenk filed a forcible entry and detainer action in the justice court, seeking to evict Perry from the property.[5]

*(d) The Lawsuit*

Crump filed a declaratory judgment action in the trial court, asking the court to declare the correction deed void since it purported to change the substance of the original deed rather than merely correct a facial imperfection. Crump alleged that the effect of voiding the correction deed would vest Crump, by virtue of the original warranty deed, with all the rights and interests in the property, including possession. Crump further alleged that Frenk breached the settlement agreement by failing to pay the ad valorem taxes, property hazard insurance, and utilities on the property, and by failing to maintain, protect, and preserve the property. Crump asked to have the settlement agreement rescinded on the bases that (1) Frenk had allegedly breached the agreement and (2) the correction deed was void. Although Crump asked to recover attorney's fees pursuant to the Declaratory Judgments Act (TEX. CIV. PRAC. & REM. CODE ANN. § 37.002 (West 2008)), she did not seek the recovery of monetary damages.

Frenk counterclaimed seeking a declaratory judgment that she holds a life estate in the property, that Crump is not entitled to rescission of the agreement, and that Frenk is entitled to possession of the property. Frenk alleged Crump breached the settlement agreement in failing to

---

[5]In connection with the case below, the parties entered into a Rule 11 Agreement whereby they agreed that Frenk would not pursue the forcible entry and detainer action and Crump would abide by the decision in the trial court case as to ownership of the property. The agreement further required Perry to move from the property within seven days of any ruling or finding that Frenk continues to own or has a life estate in the property.

5

convey a life estate to Frenk in accord with the dictates of the settlement agreement and in her act of having taken possession of the property. Frenk sought damages consisting of the amounts paid for insurance and taxes during the period she had been unable to use the property and sought specific performance of the settlement agreement to compel Crump to convey a life estate.

Crump filed a motion for summary judgment wherein she sought a declaration that the correction deed was void because it was used to make substantive changes in the original warranty deed. Crump further argued that Frenk moved from the property, does not consider it her primary residence, and has no intention of moving back to the property. Such admissions, Crump alleged, show Frenk's intent to continue breaching the settlement agreement by taking actions contrary to the stated purpose of the settlement (the object of which was to provide Frenk a place to live to the exclusion of all others until her death), the effect of which would be to abrogate the dictates of the settlement agreement that the ad valorem tax benefits available to elderly homeowners be sought and maintained (i.e., the homestead exemption, the over-65 tax exemption, and the right to interpose age against the foreclosure of the ad valorem tax lien), causing substantially more taxes to become due and payable than would otherwise be required.

In a competing motion for summary judgment, Frenk argued that it was Crump and not she who had breached the settlement agreement. Frenk maintained that Crump was not entitled to rescission and that Frenk was excused from performance and/or continued performance by Crump's breach and repudiation of the contract. Frenk further maintained entitlement to summary judgment with respect to her own claims for declaratory judgment and breach of

contract because Crump repudiated both the contract and the deed. Frenk claimed Crump breached the agreement by interfering with Frenk's use and enjoyment of the property and by filing suit in an effort to set aside the correction warranty deed. Frenk also sought judgment granting her specific performance of the requirements in the settlement agreement.

The trial court entered judgment finding that Crump was obligated under the settlement agreement to convey a life estate in the real property, that the correction warranty deed from Crump to Frenk is void and failed to convey a life estate, and that Crump has repudiated any obligation to convey a life estate to Frenk. The court awarded damages to Frenk in the amount of $1,636.67 and ordered Perry to vacate the property within seven days of the judgment. Finally, the trial court ordered Crump to specifically perform the obligations under the settlement agreement by conveying a full, nontransferable life estate in the real property and enjoining Crump, Perry, and anyone acting on their behalf from entering the property and from interfering with Frenk's use and enjoyment of the property for Frenk's lifetime.[6] The judgment does not require that Frenk continually make the property her home or take the other steps necessary to assure the application of the allowable homestead and over-65 tax exemptions available to homeowners, or to interpose the prohibition against foreclosure of the tax lien which would be available to elderly homeowners. If the trial court intended to craft its order so its effect would be to place the parties in compliance with the requirements of the settlement agreement, these would necessarily have been included. Since Crump did not sufficiently pursue this apparent

---

[6]The trial court further determined that "[t]o the extent that Crump's Motion for Summary Judgment is consistent with the Court's Declaratory Judgment it is GRANTED." Crump's motion for summary judgment sought a declaration that the correction warranty deed was void—a finding supported by the trial court's judgment.

omission at the trial level to sufficiently establish that resurrection of the obligations under the settlement agreement was the intention of the trial court and has not requested that we modify the judgment to include those requirements, we do not do so here.

## II.     Standard of Review

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors*, *Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). An appellate court reviews de novo the grant or denial of a motion for summary judgment. *Id.* Where, as here, each party files dispositive cross motions for summary judgment and the court grants one and overrules the other, the appellate court has jurisdiction to review both the grant and the denial. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). In such a case, the appellate court is to review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Id.*; *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied).

## III.     Analysis

### *(a)     Breach of the Settlement Agreement*

The settlement agreement required Crump to convey a nontransferable life estate to Frenk. Both parties agree that the attempt made to reinstate a life estate in Frenk (the execution of a correction deed by Frenk) was a void instrument. Crump candidly admits this failure to

transfer a life estate was a breach of the agreement.[7] She maintains, however, that this breach is of no consequence because it was ignored by Frenk, who, even after executing the void deed and not having received a deed conveying back a life estate in the property, continued to perform under the contract.[8] This Court is keenly aware that both parties believed the deed operated to

---

[7]"A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769–70 (Tex. App.—Dallas 2005, pet. denied). Whether a breach is material hinges in large part upon whether, as a result of the breach, "the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance." *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994); *Davis v. Allstate Ins. Co.*, 945 S.W.2d 844, 846 (Tex. App.— Houston [1st Dist.] 1997, no writ); *Herter v. Wolfe*, 961 S.W.2d 1, 4 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Whether a breach of contract is material is a question of fact. *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 394–95 (Tex. App.—Texarkana 2003, pet. denied) (citing *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983)). Crump does not claim that a genuine issue of material fact exists on the question of whether the failure to transfer a life estate to Frenk is a material breach of the contract**.**

[8]Crump claims that Frenk—who chose to treat the settlement agreement as still binding on the parties even after Crump's breach by failing to deliver the deed that the settlement agreement mandated—was thereby required to continue to fulfill her obligations under the agreement. Because Frenk allegedly failed to fulfill her obligations, Crump argues Frenk breached the agreement. Frenk takes the position that this issue was waived and, thus, cannot be considered by this Court. The Texas Rules of Civil Procedure provide that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c).

     Frenk's waiver argument is based on the assertion that this precise argument was not raised until Crump filed her motion to reconsider, after summary judgment was entered. Frenk objected to the late briefing, and the trial court entered an order that Crump's "post-hearing arguments that assert new arguments or legal theories not contained in Plaintiffs' Motion for Summary Judgment or Plaintiff's Response to Defendant's/Counter-Plaintiff's Motion for Summary Judgment is DENIED." The issue, therefore, is whether the aforementioned argument was raised in Crump's motion for summary judgment or in her response to Frenk's motion. This argument was not raised in Crump's motion for summary judgment.

     In her response to Frenk's motion for summary judgment, Crump argued, "Frenk also has to either agree to a rescission of the contract or continue to perform under it if she truly believes the Settlement Agreement has been repudiated. *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)." Crump maintained that "[b]y waiting to sue until Frenk believed that Crump had repudiated the contract, she was left only with the option of continuing to perform under it. *Bumb v. Intercomp Techs., L.L.C.*, 64 S.W.3d 123, 125 (Tex. App.—Houston [14th Dist.] 2001, no pet.)." These cases have to do with repudiation and anticipatory breach and do not stand for the proposition that a party who elects to treat a contract as continuing after a material breach thereby deprives himself of any excuse for ceasing his own performance. Indeed, Crump cites no cases in either her motion for summary judgment or in her summary judgment response that stand for the foregoing proposition. Nevertheless, we do not believe Crump waived this issue. Even though she fails to cite specific caselaw supporting this claim, she does "piece together" the substance of what she now maintains on appeal.

     Crump argues, in her response, that Frenk concedes the correction deed is void and has taken the position that Crump never transferred a life estate. She further maintains that prior to any action by Crump to protect the

achieve the aims of the settlement agreement and was, therefore, valid at the time of execution and that both parties continued in this mistaken belief for approximately three years thereafter. Crump does not address this aspect of the case.[9] Crump argues that Frenk's continued performance (at least until May 2010) deprives Frenk of any excuse for her subsequent nonperformance. *Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006) (per curiam) ("'[a] party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part'") (quoting *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982)). In other words, Crump argues that Frenk (in seeking to benefit from the contract even after the breach occurred) made a conclusive choice, depriving Frenk of an excuse for her own nonperformance. *See Henry v. Masson*, 333 S.W.3d 825, 840–41 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Hanks*, 644 S.W.2d at 708.

This argument begs the question of whether, if one party commits a breach (here, Crump), can the other party (here, Frenk) use that breach to justify nonperformance even if, at the time of her own nonperformance, the party who continued to perform was unaware of the

---

corpus of the property, Frenk abandoned the property, allowed it to go into disrepair, and took actions that will cause the loss of homestead and over-65 exemptions, all of which are express requirements of the settlement agreement. Crump, therefore, argues that if she breached the agreement, such breach was excused due to Frenk's continuing performance and subsequent breach. While these arguments are certainly not models of clarity, we believe they were sufficient to preserve this point of error for our review.

[9] At oral argument, Crump claimed that Frenk continued to perform under the contract even after she became aware of the void correction deed, as evidenced by the continued payment of insurance and taxes on the subject property. At the same time, Crump claims that even though Frenk continued to perform under the contract, such performance was only partial. This is due to Crump's claim that Frenk breached the agreement in May 2010 when she abandoned the property. In essence, Crump suggests that by partially performing the contract after receiving notice of the void deed, Frenk elected to be bound by the contract. We disagree with this analysis. Crump adamantly contends that Frenk breached the contract in May 2010 when she abandoned the property. Partial performance by Frenk cannot support Crump's theory of election.

nonperforming party's breach. The answer to this question appears to be that such nonperformance is justified, even in the absence of knowledge of the breach, assuming the breach is material. *See* RESTATEMENT (SECOND) CONTRACTS § 225 cmt. e, § 237 cmt. c, § 385 cmt. a (1981). Logically, if Frenk was unaware of the breach, she would not be in a position to choose to ignore it; a person is unable to ignore something of which that person is totally unaware. The actual choice to ignore a breach and continue performance presupposes knowledge of the breach. *See, e.g.*, *Henry*, 333 S.W.3d at 840–41; *Hanks*, 644 S.W.2d at 708. It would, thus, be illogical to find that Frenk chose to ignore the breach and continue performance, thereby depriving her of an excuse for her own nonperformance.[10]

Frenk contends that Crump not only breached the agreement by not having made the transfer required in the settlement agreement, she further claims Crump repudiated the agreement and the correction deed by seeking to set both aside when she filed her declaratory judgment action. The trial court found Crump was obligated to convey a life estate in the property but that the correction warranty deed was void and failed to convey such life estate. Because the execution of the void correction deed did not comport with the requirements of the settlement agreement, we need not address the issue of repudiation.

Even though, from an equitable standpoint, it appears that Crump in good faith believed she was complying with the contract by permitting Frenk to remain undisturbed on the property

---

[10]Even assuming (without deciding) Frenk breached the agreement by leaving the property, failing to maintain and repair the property, and jeopardizing the relevant tax exemptions, under the facts presented here, Crump should not be able to take advantage of such breach given her previous failure to convey a life estate by deed to Frenk.

after the settlement agreement was fully executed, she has not properly raised this issue on appeal.[11]

*(b)    Damages*

The judgment awards $1,636.67 to Frenk, although it fails to state the basis for this award.  Frenk's motion for summary judgment sought recovery of $2,455.03 for homeowner's insurance and ad valorem taxes Frenk paid while Perry was occupying the house.  This figure is supported by the affidavit of Price, attached as an exhibit to Frenk's summary judgment motion.

---

[11]On appeal, Crump claims that Frenk is estopped from asserting Crump breached the contract because Frenk accepted the benefits of the contract after Crump's breach.  It is undisputed that Frenk lived on the property for three years and enjoyed all of the practical benefits of a life estate.  This issue, however, was raised for the first time in Crump's post-hearing briefing.  On February 24, 2012, prior to the entry of the trial court's final judgment, Crump filed "'Plaintiffs' Post Hearing Briefing Regarding Competing Motions for Summary Judgment.'"  On March 30, 2012, the trial court entered an order denying "Plaintiffs' Post-Hearing Briefing Regarding Competing Motions For Summary Judgment."  The order denied Crump's request to amend her pleadings to add a new defense and determined that Crump's "post-hearing arguments that assert new arguments or legal theories not contained in Plaintiffs' Motion for Summary Judgment or Plaintiff's Response to Defendant's/Counter-Plaintiff's Motion for Summary Judgment is DENIED."  On April 9, 2012, Crump filed a "Motion to Reconsider Court's Grant of Summary Judgment to Defendant."  The final judgment was not issued until May 14, 2012.  The trial court's docket sheet indicates, however, that a letter ruling on the competing motions for summary judgment was issued on March 30, 2012.  The estoppel issue has been waived.  *See Young v. McKim*, 373 S.W.3d 776, 784 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (holding issue not preserved for appellate review when nonmovant failed to present argument to trial court in written response); *see also* TEX. R. CIV. P. 166a(c).

Likewise, from an equitable standpoint, this case should be analyzed in light of the parties' mutual mistake.  A mutual mistake is established when the evidence shows that both parties were acting under the same misunderstanding of the same material fact.  *Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 784 (Tex. App.—Dallas 1990, writ denied).  Here, the summary judgment evidence indicates that both parties believed the correction deed endowed Frenk with a life estate in the property.  After the deed was signed, the parties proceeded under the assumption that a life estate had been conveyed.  In reality, Crump's "breach" in failing to transfer a life estate by deed was in the nature of a mutual mistake, which was not discovered by the parties until after Frenk abandoned the property.  A mutual mistake is not a defense to a breach of contract claim, but rather is an equitable ground for rescission.  *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 902 S.W.2d 488, 500 (Tex. App.—Austin 1993), *rev'd in part on other grounds*, 908 S.W.2d 415 (Tex. 1995).  In spite of the fact that this appears to be a classic mutual mistake, Crump merely claimed the correction deed was void, and, thus, the contract should be rescinded.  She never specifically alleged mutual mistake.  Frenk simply claims that the void correction deed amounts to a breach of the contract or, alternatively, a failed condition.  So, even though this case should appropriately be analyzed in light of the mutual mistake doctrine, it cannot be addressed as it was never raised in the trial court, either as a part of the summary judgment motions, or in any responses thereto.  *See Kaye/Bassman Int'l Corp. v. Help Desk Now, Inc.*, 321 S.W.3d 806, 818 (Tex. App.—Dallas 2010, pet. denied).

It is apparent the trial court's damage award constitutes reimbursement for insurance and taxes paid by Frenk for a fixed period of time. There is no complaint that this award is not supported by the evidence.

Instead, Crump claims that because Frenk chose to treat the contract as continuing after the breach (the failure to transfer a life estate by deed), she was required to perform under the agreement. The agreement specifically required Frenk to pay ad valorem taxes and to maintain homeowner's insurance on the property. Therefore, Crump maintains that the trial court was precluded from awarding Frenk monetary damages for any breach by Crump.[12] As previously discussed, Frenk did not elect to treat the contract as continuing after the breach. Accordingly, Crump's damage argument must fail.

*(c)    Injunctive Relief*

In addition to requiring Crump to specifically perform by conveying a full, nontransferable life estate in the real property to Frenk,[13] the judgment further enjoins "Crump, Perry and anyone acting on their behalf or in conjunction with them . . . from entering on the

---

[12]Frenk claims that Crump waived her claim that the trial court could not award specific performance and actual damages because such claim was raised for the first time on appeal. Frenk's motion for summary judgment seeks both specific performance and actual damages. Crump's response thereto does not raise any issue regarding Frenk's entitlement to both specific performance and actual damages. While Crump raised the issue of Frenk's alleged failure to prove damages in the trial court, this claim does not raise the legal issue of whether the remedies of specific performance and damages are mutually exclusive. Because Crump raises this argument for the first time on appeal, she has waived any error. *See Young*, 373 S.W.3d at 784; *see also* TEX. R. CIV. P. 166a(c).

[13]The judgment states that "Crump is ordered to specifically perform by conveying a full, non-transferable life estate in the real property and improvements located at 209 E. Driftwood, White Oak, Texas to Crump . . . ." The order of a conveyance from Crump to Crump is obviously a typographical error.

13

property . . . and from interfering with Frenk's use and enjoyment of said property for the lifetime of Margarete Frenk."[14]

Crump contends that Frenk failed to show irreparable harm or even a threat of irreparable harm in support of injunctive relief. The grant of injunctive relief is not appropriate in the absence of a showing of irreparable harm. *Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex. 2001) (per curiam). An injunction will not be issued to prevent injury that is purely conjectural or speculative. *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983); *Jordan v. Landry's Seafood Rest*., *Inc*., 89 S.W.3d 737, 742 (Tex. App.— Houston [1st Dist.] 2002, pet. denied). Whether to grant or deny a permanent injunction lies within the trial court's discretion. *See Operation Rescue–Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). An injunction that enjoins lawful as well as unlawful acts may constitute an abuse of discretion. *Brammer v. KB Home Lone Star*, *L.P*., 114 S.W.3d 101, 111 (Tex. App.—Austin 2003, no pet.).

---

[14]Crump argues that Frenk is not entitled to injunctive relief because such relief was only sought in her prayer, such relief was not presented in her "Grounds for Summary Judgment," and this issue was not briefed in the trial court. *See McConnell v. Southside Indep. Sch. Dist*, 858 S.W.2d 337, 341 (Tex. 1993) (motion for summary judgment must itself expressly present grounds upon which it is made; reliance may not be placed on briefs in support of summary judgment). Rule 166a(c) states that "the motion for summary judgment shall state the specific grounds therefore." Frenk's motion for summary judgment includes the following request:

> In conjunction with confirmation of her life estate in the premises, Frenk is entitled to a permanent injunction to prevent further interference by Crump, Perry or anyone on their behalf interfering with her use and enjoyment of the property. This injunction should include a prohibition of entry onto the property. Crump and Perry have shown an unwillingness to recognize Frenk's rights and have no qualms about interfering with those rights. Frenk has no adequate remedy at law other than an injunction to prevent future interference.

This argument was included in Frenk's motion rather than a separately filed brief in support or in accompanying summary judgment evidence. There is no merit in the contention that the trial court erred in granting injunctive relief on the basis that such relief was not requested in the motion.

Frenk argues that because Crump previously asked Perry to move into the property, she has shown past interference with her life estate. She maintains this action reveals the intent to continue to interfere, and she posits that this establishes irreparable harm. Frenk overlooks the fact that the judgment (once enforced) orders Perry to vacate the real property within seven days. She fails to present any evidence of threatened interference with her right of possession in the future. An injunction will not be issued to prevent injury that is purely speculative. *Frey*, 647 S.W.2d at 248. Moreover, the purpose of injunctive relief is to halt wrongful acts threatened or that are in the course of accomplishment, rather than to grant relief for past actionable wrongs or to prevent the commission of wrongs not imminently threatened. *Webb v. Glenbrook Owners Ass'n*, *Inc*., 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.); *Tex. Emp't Comm'n v. Martinez*, 545 S.W.2d 876, 877 (Tex. App.—El Paso 1976, no writ). Here, there is nothing to indicate the probability of future interference by Crump or Perry. Under these circumstances, the grant of injunctive relief was not appropriate.[15]

## IV.    Typographical Error in Judgment

In describing the equitable relief being granted to Frenk, as pointed out previously, the judgment signed by the trial court recites, "(1) that Crump is ordered to specifically perform by conveying a full, non-transferable life estate in the real property and improvements located at 209 E. Driftwood, White Oak, Texas to Crump." This is an obvious error because the clear intention of the trial court was that Frenk (not Crump) was to receive a life estate interest in the property.

---

[15]Crump also claims the injunctive relief was overly broad. Because we decide the grant of injunctive relief was not appropriate, we do not address this claim. Under appropriate circumstances, Crump would be entitled to seek equitable relief for waste committed by the life tenant—an action she has not pursued to date.

**V.      Conclusion**

We modify the judgment in the following respects:  (1) we eliminate the injunctive relief afforded to Frenk and (2) we correct the judgment to reflect that Crump is to execute a deed conveying a life estate interest in the subject property to Frenk as grantee and deliver said deed. We affirm the judgment, as modified.


                                                  Bailey C. Moseley
                                                  Justice


Date Submitted:      May 15, 2013
Date Decided:        June 5, 2013

16