NUMBER 13-01-013-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI






GREGORY STEWART JOHNSON, Appellant,


v.



CHARLES T. SMITH, Appellee.





On appeal from the 267th District Court


of Refugio County, Texas.






O P I N I O N



Before Justices Dorsey, Yañez, and Rodriguez


Opinion by Justice Dorsey



 This is the appeal from a summary judgment granted in favor of Charles T.
Smith on the grounds that Gregory Stewart Johnston's claims for negligence against
him were barred by Chapter 87 of the Texas Civil Practice and Remedies Code. While
we hold that section 87.003 applies to immunize a person from the category of injuries
within which Johnston's claims fall, we also hold that there remains a genuine issue
of material fact regarding whether one of the exceptions to immunity applies. 
Accordingly, we reverse and remand.

 "Island Born," a thoroughbred stallion owned by Smith, bit Johnston in the face
in March 1998 as Johnston led the stallion back to his paddock after breeding him. 
Smith owns Smith Farms, a horse breeding facility, where he raises horses and
employs full-time and part-time workers. Johnston bred race horses and worked for
Smith on occasion. At the time of the incident, Johnston worked for Smith as an
independent contractor in charge of breeding and handling the stallions during the
breeding season. Johnston was leading the stallion to his paddock after a breeding
when the incident occurred.

 The standard of review on appeal is whether the movant carried the burden of
showing that there is no genuine issue of material fact and that judgment should be
granted as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co.,
Inc., 690 S.W.2d 546, 548 (Tex. 1985). This court must decide whether the
summary judgment proof establishes as a matter of law that there is no genuine issue
of fact as to one or more elements of the non-movant's cause of action. Id. at 549;
Gibbs v. Gen. Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). In resolving whether
there is a disputed material fact issue, evidence favorable to the non-movant will be
taken as true and all reasonable inferences, including doubts, will be indulged in the
non-movant's favor. Nixon, 690 S.W.2d at 548-49.

 In four issues Johnston raises, essentially, one general point of error. He argues
that chapter 87 which limits liability related to equine activities only applies to public
equine operations open to the public for entertainment. We disagree. Rather, we find
that straightforward application of the relevant statutory language shows the activity
in which Johnston was engaged at the time he sustained his injury included an
inherent risk of injury and falls within the purview of the statute.

 First, we note that there is no language in the chapter to indicate that its
applicability is limited to "public" facilities.

 The immunity provision states:

 Except as provided by Section 87.004, any person . . . is not liable for . . .
damages arising from the personal injury . . . of a participant in an equine
activity . . . if the . . . injury . . . results from the dangers or conditions that are
an inherent risk of an equine activity . . . 

Tex. Civ. Prac. & Rem. Code Ann. § 87.003 (Vernon Supp. 2002).

 In order for the statute to immunize a person from liability for equine activities,
the injured party must be a "participant in an equine activity" and the injury must result
from "an inherent risk of equine activity." Id. Johnston argues that in order for Smith
to be immunized from liability under the statute, he must be engaged in a public equine
operation or activity. We see no such limitation in the statute.

 First, the statute applies to a "person," and that term is not specifically defined
in the chapter. The statute states that "a person" is immune from liability under
certain circumstances. It does not limit the category of persons that may be
immunized by it. Rather, other portions of the statute provide the limitations on
liability. That is, the injured party must be a "participant in an equine activity" and the
injury must have resulted from something that was an "inherent risk of equine
activity."

 Johnston was a participant in an equine activity. A "participant" is "anyone
who engages in an equine activity." Tex. Civ. Prac. & Rem. Code Ann. §
87.001(Vernon Supp. 2002). The phrase "engages in an equine activity" is
specifically defined to mean "riding, handling, training, driving, assisting in the medical
treatment of, being a passenger on, or assisting a participant or sponsor with an
equine animal . . ." Id. (emphasis added). Johnston was leading the stallion back to
his paddock after a breeding when he was bitten within the common usage of
"handling," "training" and "assisting in the medical treatment of an equine."

 The more troublesome question is whether the stallion's biting Johnston in the
face was an inherent risk of equine activity as envisioned by the statute. Although the
statute defines "engages in an equine activity" to include "riding, handling and
assisting in the medical treatment of" an equine, the statute also specifically defines
"equine activity" to mean something slightly different. "Equine activity" means:

 (A) an equine animal show, fair, competition, performance, or parade that
involves any breed of equine animal and any equine discipline, including
dressage, hunter and jumper horse shows, grand prix jumping, three-day
events, combined training, driving, pulling, cutting polo, steeple chasing,
English and Western performance, riding, endurance trail riding and
Western games, and hunting;


 (B) equine training or teaching activities;


 (C) boarding equine animals;


 (D) riding, inspecting, or evaluating an equine animal belonging to
another, without regard to whether the owner receives monetary
consideration or other thing of value for the use of the equine animal or
permits a prospective purchaser of the equine animal to ride, inspect, or
evaluate the equine animal;


 (E) informal equine activity, including a ride, trip, or hunt that is
sponsored by an equine activity sponsor;


 (F) placing or replacing horseshoes on an equine animal; or

 (G) without regard to whether the participants are compensated, rodeos
and single event competitions, including team roping, calf roping, and
single steer roping.


Id. § 87.001. The question is whether leading a stallion back to its paddock from a
breeding by Johnston falls within the definition of "equine activity." We hold that it
does.

 Johnston's act of leading the horse could fall within an equine "training activity"
or "boarding equine animals." Both of these activities include basic handling and
leading of horses. Training a horse involves a variety of tasks, and can include all
types of daily maintenance and care of the horse. The term is not specifically limited
to only acts that involve actually teaching the equine new behaviors, but also
encompasses leading the horse from one place to another. Boarding a horse also
involves a variety of tasks including the day-to-day maintenance and routine of keeping
a horse. The retrieval of a horse and the leading of that horse to its paddock would
certainly fall within the normal daily care of an equine.

 Having determined that leading a horse back to its stall is an equine activity
inherent in the terms boarding and training used in the statutory definition of equine
activity, we now turn to the question of whether a genuine issue of material fact
exists regarding whether an exception to the immunity provided by section 87.003
applies.

 The statute also contains a section listing the circumstances under which a
person may be held liable for injuries incurred by a participant in an equine
activity--.i.e., exceptions from immunity. Those exceptions from immunity are in
section 87.004, which provides:

 A person, including an equine activity sponsor, equine professional,
livestock show participant, or livestock show sponsor, is liable for
property damage or damages arising from the personal injury or death
caused by a participant in an equine activity or livestock show if:


 (1) the injury or death was caused by faulty equipment or tack used in
the equine activity or livestock show, the person provided the equipment
or tack, and the person knew or should have known that the equipment
or tack was faulty;

 (2) the person provided the equine or livestock animal and the person did
not make a reasonable and prudent effort to determine the ability of the
participant to engage safely in the equine activity or livestock show and
determine the ability of the participant to safely manage the equine or
livestock animal, taking into account the participant's representations of
ability;


 (3) the injury or death was caused by a dangerous latent condition of
land for which warning signs, written notices, or verbal warnings were
not conspicuously posted or provided to the participant, and the land was
owned, leased, or otherwise under the control of the person at the time
of the injury or death and the person knew of the dangerous latent
condition;


 (4) the person committed an act or omission with wilful or wanton
disregard for the safety of the participant and that act or omission caused
the injury;


 (5) the person intentionally caused the property damage, injury, or death; 
or


 (6) with respect to a livestock show, the injury or death occurred as a
result of an activity connected with the livestock show and the person
invited or otherwise allowed the injured or deceased person to participate
in the activity and the injured or deceased person was not a participant
as defined by Section 87.001(9)(B). 

Tex. Civ. Prac. & Rem. Code Ann. § 87.004 (Vernon Supp. 2002) (emphasis added). 
 We find evidence sufficient to raise a fact issue regarding whether Smith made
a "reasonable and prudent effort to determine the ability of the participant to engage
safely" in the activity at issue in this case, and whether Smith's conduct rose to the
level of wilful or wanton disregard for Johnson's safety. Deposition testimony from
the veterinarian who treated Smith's horses was included with Johnston's summary
judgment evidence, and the veterinarian testified that Smith kept the stallion isolated;
that the other workers at his equine facility were afraid of the stallion; and that the
stallion was extremely and increasingly aggressive. He testified that the stallion would
lunge at people when they went near him, and that as a result, the horse was not
handled much. Thus, there is a fact issue regarding the level of Smith's potential
culpability for failing to properly warn Johnston of the increased aggression of Island
Born and whether such failure rises to the level of lacking in reasonable care,
wilfulness or wantonness.

 Having found that a genuine issue of material fact exists, we reverse and
remand for further proceedings consistent with this opinion. See Tex. R. Civ. P.
166a(c).



 ______________________________

 J. BONNER DORSEY,

 Justice


Publish.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 25th day of July, 2002.