**Stuart LITTLE, Appellant,**

v.

**Susan NEEDHAM, Individually and d/b/a/ Needham Stables and Sam Houston Feed & Supply and Alan Needham, Individually and d/b/a/ Sam Houston Feed & Supply II, Appellees.**

No. 01–06–01108–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 28, 2007.

Timothy A. Hootman, Houston, TX, for Appellant.

Ruth E. Piller, Hays, McConn, Rice & Pickering, P.C., Earl L. Humphreys, Aaron Pool, Donato, Minx & Brown, P.C., Houston, Michael G. Martinez, Friendswood, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Stuart Little, appeals from the trial court's order that granted summary judgment in favor of appellees, Susan Needham, individually and d/b/a/ Needham Stables and Sam Houston Feed & Supply and Alan Needham, individually and d/b/a/ Sam Houston Feed & Supply II (collectively, the "Needhams"). In six issues, Little argues that the evidence raises a fact issue as to (1) whether his injuries resulted from dangers or conditions that are an inherent risk of equine activity and, if not, whether any of the exceptions to immunity for injuries arising out of such inherent risks apply or (2) whether his injuries resulted from a premise defect and, if so, whether the Needhams exercised control over and negligently maintained the premises.

We affirm.

### Facts and Procedural History

In January 2004, the Needhams purchased a feed store and horse stables from J. Raymond Harmon, Jr. This property is located next to an approximately three-acre parcel of land belonging to Dr. John McBride. During the time Harmon owned the feed store and the stables, he noticed that the largely swampy McBride property was not being used for anything, so he asked Dr. McBride if he could use the land

for riding and grazing horses. Dr. McBride consented, and Harmon filled in the land and erected a fence, which included a gate to his own property. Over time, a circular track developed on the McBride property on which grass no longer grew.

On April 14, 2005, Erica Perez invited Little to the Needhams' stables where she boarded her horse, Moose. Little rode Moose for the first time that day. The following day, Little returned to the Needhams' stables to ride Moose. While galloping around the track on the McBride property, Little collided with a tree located to the side of the track and was injured. Little's sixth amended petition alleged:

> As [Little] was riding around the horse track, the horse he was on started to veer towards the outer portion of the track and as the horse neared the outer edge of the track, [Little] violently struck a tree, limb of the tree or part of the trunk of the tree, which may or may not have protruded onto the horse track. The force of the impact caused [Little] to fall off the horse and hit the track below. Furthermore, the track had no outer railing or other similar device to prevent horses from going near the tree, tree limb or trunk that bordered the track.

Although Little testified at his deposition that he was in control of Moose "the whole time," or else he would not have been riding him, and that he could not remember having any trouble controlling Moose, he did acknowledge that he could tell that Moose "wasn't fully trained or completely worked ... because he was a little jumpy, he was free spirited." Sometime thereafter, Little filed suit against the Needhams, among others.

On May 23, 2006, the Needhams filed a motion for summary judgment. On June 15, 2006, Little filed his response to the Needhams' motion for summary judgment, which relied upon and included, as exhibits, excerpts from his own deposition and the depositions of Susan Needham, Julio Arredondo, one of the Needhams' employees, Laura Tindall,[1] Harmon, and the affidavits of Michael Sellers, a private investigator who investigated the Needhams' stables, Jill Cooke, an experienced equestrian, Perez, and Little. On June 23, 2006, the Needhams' filed a reply that included objections to the deposition testimony of Laura Tindall and the affidavits of Sellers, Cooke, Perez, and Little. On June 27, 2006, the trial court signed an order sustaining each objection. That same day, the trial court granted the Needhams' motion for summary judgment, ordering that Little take nothing from the Needhams.

## Standard of Review

Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *Bendigo v. City of Houston,* 178 S.W.3d 112, 113 (Tex.App.-Houston [1st Dist.] 2005, no pet.). The standard of review for a traditional summary judgment motion is threefold: (1) the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *see* Tex.R. Civ. P. 166a(c). A defendant seeking summary judgment must as a matter of law negate at least one element

---

1. The record does not show how Tindall is related to the litigation.

of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *Mo. Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex.App.-Austin 2002, pet. dism'd). If a trial court's order granting summary judgment does not specify the basis for the court's ruling, as is the case here, the summary judgment will be affirmed if any of the theories advanced by the movant is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

## Objection to Use of Summary Judgment Evidence on Appeal

■ Before we address the merits of Little's arguments, we must first address the effect of the trial court's June 27, 2006 order sustaining the Needhams' objection to much of Little's summary judgment evidence. In their reply to Little's response to their motion for summary judgment, the Needhams objected to the deposition testimony of Tindall and the affidavits of Sellers, Cooke, Perez, and Little. The trial court sustained these objections. On appeal, Little refers to this evidence, but does not attack the merits of the trial court's ruling. Accordingly, we may not consider the deposition testimony of Tindall and the affidavits of Sellers, Cooke, Perez, and Little in reviewing the trial court's summary judgment. *See Inglish v. Prudential Ins. Co. of America*, 928 S.W.2d 702, 706 (Tex.App.-Houston [1st Dist.] 1996, writ denied).

## Whether Injury Resulted From Dangers or Conditions That Are an Inherent Risk of Equine Activity

In his first and second issues, Little argues that the evidence raises a fact issue as to whether his injuries resulted from dangers or conditions that are an inherent risk of equine activity. More specifically, Little contends that the evidence shows that his injuries were not caused by the "inherent possibility of falling down while horse back riding," but rather by the track's design, in that the tree was not removed and a fence was not erected.

Under the Texas Civil Practice and Remedies Code, no person, including an equine activity sponsor[2] or equine professional,[3] is liable for damages arising from the personal injury or death of a participant[4] in an equine activity[5] if the injury or death results from dangers or conditions that are an inherent risk of equine activity, including (1) the propensity of an

2. "Equine activity sponsor" is defined as "a person or group who sponsors, organizes, or provides facilities for an equine activity, including equine facilities for a pony club, 4–H club, hunt club, riding club, therapeutic riding program, or high school or college class, program, or activity, without regard to whether the person operates for profit" or "an operator of, instructor at, or promoter for equine facilities, including a stable, clubhouse, pony ride string, fair, or arena at which an equine activity is held." TEX. CIV. PRAC. & REM.CODE ANN. § 87.001(4) (Vernon 2005).

3. "Equine professional" is defined as a person engaged for compensation "to instruct a participant or rent to a participant an equine

animal for the purpose of riding, driving, or being a passenger on the equine animal" or "to rent equipment or tack to a participant." *Id.* § 87.001(5) (Vernon 2005).

4. "Participant" is defined as "a person who engages in [equine] activity, without regard to whether the person is an amateur or professional or whether the person pays for the activity or participates in the activity for free." *Id.* § 87.001(9)(A) (Vernon 2005).

5. The definition of "equine activity" includes (1) equine training or teaching activities; (2) boarding equine animals; and (3) riding, inspecting, or evaluating an equine animal belonging to another. *Id.* § 87.001(3)(B)-(D) (Vernon 2005).

equine to behave in ways that may result in personal injury or death to a person on or around it; (2) the unpredictability of an equine's reaction to sound, a sudden movement, or an unfamiliar object, person, or other animal; (3) certain land conditions and hazards, including surface and subsurface conditions; (4) a collision with another animal or an object; or (5) the potential of a participant to act in a negligent manner that may contribute to injury to the participant or another, including failing to maintain control over the equine or not acting within the participant's ability. TEX. CIV. PRAC. & REM.CODE ANN. § 87.003 (Vernon 2005). When a court is presented with a case under a statute with a non-exclusive list of inherent risks, as we are here, "it may compare the facts of the case to the list of legislatively defined risks and decide, as a matter of law, whether the plaintiff's injury resulted from an inherent risk." Gamble v. Peyton, 182 S.W.3d 1, 2 (Tex.App.-Beaumont 2005, no pet.) (quoting Halpern v. Wheeldon, 890 P.2d 562, 566 (Wyo.1995)).

■ Here, Little was injured when Moose, a jumpy and free-spirited horse that was not fully trained, veered off the track, causing Little to collide with a tree. Under section 87.003, both the propensity of an equine to behave in ways that may result in injury or death and a collision with an object are statutorily defined dangers or conditions that are an inherent risk of an equine activity. TEX. CIV. PRAC. & REM.CODE ANN. § 87.003(1), (4). We conclude, therefore, that the facts alleged by Little fall squarely within the statutorily defined dangers or conditions that are an inherent risk of equine activity under section 87.003. See id.; see also Jorst v. D'Ambrosio Bros. Invest. Co., No. C 00–03646 CRB, 2001 WL 969039, at *8 (N.D.Cal. Aug.13, 2001) (not designated for publication) ("Ordinarily, where the object with which a rider collides is a foreseeable part of riding—a tree branch or a fence post when a rider is outside or a jump, wall, or stall door when riding inside—the risk that a rider would brush against some object and fall is inherent in the activity."). Therefore, the evidence does not raise a fact issue as to whether his injuries resulted from dangers or conditions that are an inherent risk of equine activity.

Little contends, however, that Steeg v. Baskin Family Camps, Inc., 124 S.W.3d 633 (Tex.App.-Austin 2003, no pet.), supports his claim that his injuries were not caused by an inherent risk of equine activity. In that case, Steeg sued Baskin for injuries he sustained on a trail ride when his saddle slipped 90 degrees and he fell off the horse he was riding. Id. at 635. The trial court granted Baskin's motion for summary judgment, concluding that a slipping saddle is an inherent risk of equine activity. Id. at 635–36. The Austin Court of Appeals reversed the trial court's decision. It concluded that the trial court had erred by concluding that, as a matter of law, all slipping saddles are an inherent risk of equine activity because, although "[a] saddle may slip for many reasons, several of which arise from inherent risks of equine activity—horses sweat, saddles stretch, saddle pads compress, riders sit off-center—... a saddle may slip for reasons that are not inherent risks, such as negligent cinching." Id. at 638. Thus, because some evidence in the record supported a finding that Steeg's injuries arose from an inherent risk while other evidence supported a finding that his injuries arose from the negligent acts or omissions of the appellee, the court held that a genuine issue of material fact existed and summary judgment was improper. Id. at 639–41.

Little's reliance on Steeg with respect to his first and second issues is misplaced. The Steeg court concluded that a slipping saddle is not, as a matter of law, an inherent risk of equine activity. Id. at 638.

Nor does a slipping saddle come within any of the statutorily defined dangers or conditions that are an inherent risk of equine activity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 87.003. Therefore, *Steeg* does not support Little's contention that his injuries were not caused by dangers or conditions that are an inherent risk of equine activity. *Steeg's* actual applicability is to Little's fifth and sixth issues, which concern whether an exception to the immunity provided by the equine statute applies.

We overrule Little's first and second issues.

### Whether An Exception to Immunity Applies

In his fifth and sixth issues, Little argues that the evidence raises a fact issue as to whether three of the statutorily defined exceptions to immunity apply.

Even if a participant's injury or death resulted from dangers or conditions that are an inherent risk of equine activity, a person is liable for damages arising from a participant's injury or death (1) if the injury or death was caused by (a) faulty equipment or tack used in the equine activity, the person provided the equipment or tack, and the person knew or should have known that the equipment or tack was faulty or (b) a dangerous latent condition of land for which warning signs, written notices, or verbal warnings were not conspicuously posted or provided to the participant, and the land was owned, leased, or otherwise under the control of the person at the time of the injury or death, and the person knew of the dangerous latent condition or (2) the person committed an act or omission with willful or wanton disregard for the safety of the participant and that act or omission caused the injury. *Id.* § 87.004(1), (3), (4) (Vernon 2005).

### *Faulty Equipment*

■ Little contends that the evidence raises a fact issue regarding whether his injuries were caused by faulty equipment because the gate giving access to the track should have been closed. Assuming without deciding that the gate qualifies as equipment under section 87.004(1), Little's argument is waived. Little never alleged in his pleadings or response to the Needhams' motion that his injuries were caused by faulty equipment that was owned by the Needhams and that the Needhams knew or should have known was faulty. *See* TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal [of a summary judgment].."); *Reyes v. Storage & Processors, Inc.,* 86 S.W.3d 344, 348 (Tex.App.-Texarkana 2002) (holding that because appellant did not raise particular issue in response to motion for summary judgment, he may not raise it on appeal), *aff'd,* 134 S.W.3d 190 (Tex.2004). Even if he had raised the issue of faulty equipment, Little presented no evidence that the gate was faulty in any way or that it in any way contributed to his injuries. We conclude, therefore, that the evidence does not raise a fact issue regarding whether the exception for faulty equipment applies.

### *Dangerous Latent Condition of Land*

■ Little also argues that evidence that the track was dangerously designed and maintained in that "the tree that caused the injury [was] precariously close to the lane without a fence where the horses and riders were sure to pass as they ran by" raises a fact question regarding whether his injuries were caused by a dangerous latent condition of land.

According to Black's Law Dictionary, "latent" means "concealed." BLACK'S LAW DICTIONARY 898 (8th ed.2004). Here, Little points to no evidence that the tree was concealed. In fact, in his response to the

Needhams' motion for summary judgment, Little admitted that the tree was "noticeable in general." We conclude, therefore, that the evidence does not raise a fact issue regarding whether the exception for a dangerous latent condition of land applies.

### *Act or Omission Committed with Willful and Wanton Disregard for Safety*

■ Finally, Little contends that the evidence raises a fact issue regarding whether he was injured because the Needhams committed an act or omission with willful or wanton disregard for his safety. In support of this argument, Little points out that the Needhams failed to (1) obtain any training or education or speak to any professionals regarding the operation and maintenance of the horse facility, despite never having owned a horse facility before, or (2) conduct a safety assessment. He further argues that this conclusion is supported by *Johnson v. Smith*, 88 S.W.3d 729 (Tex.App.-Corpus Christi 2002, no pet.). In that case, Johnson sued Smith for injuries he sustained when a stallion owned by Smith bit Johnson's face as he was leading the stallion back to his paddock after breeding him. *Id.* at 730. The trial court granted summary judgment in favor of Smith. *Id.* The Corpus Christi Court of Appeals reversed the trial court's decision, holding that the evidence was sufficient to raise a fact issue regarding whether Smith's failure to warn Johnson about the stallion "rose to the level of wilful and wanton disregard for Johnson's safety." *Id.* at 733. In rendering its decision, the court cited evidence that Smith kept the stallion isolated; that Smith's other workers were afraid of the stallion; that the stallion was extremely and increasingly aggressive; that the stallion would lunge at people when they went near him; and that, as a result, the horse was not handled much. *Id.*

"Willful and wanton disregard" means "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Wheeler v. Yettie Kersting Mem'l Hosp.*, 866 S.W.2d 32, 50 n. 25 (Tex.App.-Houston [1st Dist.] 1993, no pet.) (quoting *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 916–20 (Tex.1981)). It is synonymous with "gross negligence." *Id.* (citing *Burk*, 616 S.W.2d at 920). Unlike in *Johnson*, where evidence regarding the temperament and past actions of the stallion and Smith's response thereto was evidence of such disregard, the instant case is devoid of any such evidence. Little produced no evidence that anyone had previously collided with or complained about the location of the tree; nor did he produce any evidence that the track, including its proximity to the tree and the lack of a fence, was negligently designed or maintained. We conclude, therefore, that Little failed to raise a fact issue regarding whether he was injured because the Needhams committed an act or omission with willful or wanton disregard for his safety.

We overrule Little's fifth and sixth issues.[6]

### Conclusion

We affirm the trial court's order granting summary judgment in favor of the Needhams.

---

**6.** Because we have determined that Little's injuries resulted from dangers or conditions that are an inherent risk of equine activity and that no exception applies, we need not address his alternative argument that his injuries resulted from a premise defect. *See* Tex. R.App. P. 47.1.