**Opinion issued August 21, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00755-CV

————————————

**RAUL AMPARO ZUNIGA RODRIGUEZ AND ANA MARIA ORTIZ MARTINEZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVES, AND HEIRS OF THE ESTATE OF RAUL AMPARO ZUNIGA ORTIZ JR., AND JUANA GUADALUPE MARTINEZ, AS NEXT FRIEND OF SEBASTIAN ZUNIGA AND WENDY ZUNIGA, HEIRS OF THE ESTATE OF RAUL AMAPRO ZUNIGA ORTIZ, Appellants**

**V.**

**CONWAY WAAK JR. AND MARLENE WAAK, D/B/A CARMINE CHAROLAIS RANCH, AND CARMINE CHAROLAIS RANCH, Appellees**

---

**On Appeal from the 155th District Court
Fayette County, Texas[1]**

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. Misc. Docket No. 17-9128 (Tex. Sept. 28, 2017); *see also* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases). Because we do not find any controlling authority from the Austin Court of Appeals for the issues raised, we apply precedent of this Court. *See* TEX. R. APP. P. 41.3

## CONCURRING & DISSENTING OPINION

In 2005, this Court incorrectly held that the Farm Animals Activities Act (then called the Equine Act) did not apply to employees. Because the majority upholds this incorrect holding, I respectfully dissent, in part. Because the trial court granted greater relief than was sought in its grant of summary judgment, I also concur in the judgment only, in part.

As the majority observes, Zuniga died from injuries inflicted by one of the Waaks' bulls. His family sued the Waaks. The Waaks filed a motion for summary judgment, arguing the claims were barred by the Farm Animals Activities Act. Zuniga's family responded, urging the trial court to adopt this Court's holding that the Farm Animals Activities Act did not apply to employees.[2] *See Dodge v. Durdin*, 187 S.W.3d 523, 530 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The trial court declined to adopt *Dodge* and granted summary judgment in full, even though the Waaks had moved only for a partial summary judgment.

---

(requiring reviewing court to "decide the case in accordance with the precedent of the transferor court" when courts' precedents are inconsistent).

[2] The Austin Court of Appeals, from which this case was transferred, does not have any controlling authority on this matter.

In their first issue, Zuniga's family argues the trial court erred by determining their claims were waived by the Farm Animals Activities Act. In their second issue, they argue Zuniga was not a "participant" in a farm animal activity as that term is defined within the act. In their third issue, they argue that there is a fact issue about whether the Waaks were exempt from the application of the Texas Workers Compensation Act. All three of these issues concern the Farm Animals Activities Act and our interpretation of the act's definition of "participant" in *Dodge*.

The act originally was known as the Equine Act and waived liability for owners of horses. *See id.* at 527. It has since been updated and renamed to waive liability for a broad array of animals. *See* Act of May 23, 2011, 82nd Leg., R.S., ch. 896, 2011 Tex. Gen. Laws, 2288, 2288–90 (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 87.001–.005 (West 2017)). Other than expanding the class of animals to which it applies, the act remains substantively the same. With the update, the act applies to activities related to cattle. *See* CIV. PRAC. & REM. § 87.001(2-a)(B).

Section 87.003 of the act waives liability against any person for damage incurred by "a participant in a farm animal activity or livestock show" when the damage "results from the dangers or conditions that are an inherent risk of a farm animal activity or the showing of an animal on a competitive basis in a livestock show." *Id.* § 87.003. The statute explicitly identifies inherent danger to include "the propensity of a farm animal or livestock animal to behave in ways that may result in

3

personal injury or death to a person on or around it." *Id.* § 87.003(1). Section 87.004 provides certain exceptions to the waiver of liability in section 87.003. *See id.* § 87.004.

"Farm animal activity" is defined to include a broad number of activities. *See id.* § 87.001(3). It includes, for example, training or teaching activities that involve a farm animal, boarding a farm animal, "riding, inspecting, evaluating, handling, or unloading a farm animal belonging to another," and providing veterinary services. *Id.* § 87.001(3)(B)–(D), (G).

"Participant" is defined to mean, "with respect to a farm animal activity, a person who engages in the activity, without regard to whether the person is an amateur or professional or whether the person pays for the activity or participates in the activity for free." *Id.* § 87.001(9). The parties disputed before the trial court whether Zuniga was a participant.

Only a few courts have construed the meaning of "participant" under the act. The first to do so was the Corpus Christi-Edinburg Court of Appeals. *See Johnson v. Smith*, 88 S.W.3d 729, 731 (Tex. App.—Corpus Christi 2002, no pet.). In *Johnson*, an independent contractor working for the owner of a horse was bit by the horse after the horse finished breeding. *Id.* at 730. The court held succinctly that the plaintiff was a participant, noting that "[a] 'participant' is 'anyone who engages

in an equine [now, farm animal] activity.'" *Id.* at 731 (quoting CIV. PRAC. & REM. § 87.001(9)).

Next, we construed the meaning of "participant" in *Dodge*. 187 S.W.3d 527–30. We held that employees of the owner of a farm animal were not included in the definition of participant. *Id.* at 530. We presented three grounds to support our holding: statutory construction of the definition, legislative history, and the consequences of alternative constructions. *Id.* at 527–30.

For statutory construction, we focused on the phrase "without regard to . . . whether the person pays for the activity or participates in the activity for free" within the definition. *Id.* at 528 (citing CIV. PRAC. & REM. § 87.001(9)). We reasoned that, because employees get paid for activities rather than pay or do them for free, this phrase suggested that the definition was limited to consumers, not employees. *Id.*

We distinguished the contrary holding in *Johnson* by pointing out that the plaintiff was an independent contractor, not an employee. *Id.* (citing *Johnson*, 88 S.W.3d at 731). *Johnson* did not rely on the injured party's status as an independent contractor to conclude that he was a participant, however. *See Johnson*, 88 S.W.3d at 731; *see also Johnston v. Smith*, No. 13-05-00368-CV, 2008 WL 2208865, at *1 (Tex. App.—Corpus Christi May 29, 2008, no pet.) (mem. op.) ("The trial court evidently based his holding upon our decision in [*Johnson*], where, in dicta, we stated that Johnston was an independent contractor."). Further, independent

5

contractors, like employees, get paid for their activities. So this was not a distinction that aided in supporting our construction of the plain language of the provision.

In addition, the definition of participant under the act says the general definition ("a person who engages in the activity") also applies "without regard to whether the person is an amateur or professional." CIV. PRAC. & REM. § 87.001(9). "Professional" connotes a person being paid for the activity. *See Professional*, THE NEW OXFORD AM. DICTIONARY (2d ed. 2005) ("engaged in a specified activity as one's main paid occupation"). This does not support our conclusion that the plain language of the definition indicates the term applies only to people who pay for the activity or do it for free. *See Dodge*, 187 S.W.3d at 528.

For legislative intent, we observed in *Dodge* that a legislative report had cited the negative impact of liability for horses on the tourism industry. *Id.* at 528–29. We reasoned that, because the tourism industry had been specifically mentioned in this report and the employer-employee relationship had not been mentioned, the legislative history suggested liability was only intended to be limited for "tourists and other consumers of equine activities." *Id.* at 529.

Since *Dodge*, however, the Supreme Court of Texas has disfavored relying on legislative history as a basis for construing statutes that are not ambiguous on their face. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) ("When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of

construction or extrinsic aids to construe the language."). The court has admonished Texas courts to "[c]onstru[e] clear and unambiguous statutes according to the language actually enacted and published as law—instead of according to statements that did not pass through the law-making processes, were not enacted, and are not published as law." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011); *accord Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 888 (Tex. App.—Houston [1st Dist.] 2015, no pet.). "If the text is unambiguous, we must take the Legislature at its word and not rummage around in legislative minutiae." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 n.4 (Tex. 2006).

For consequences of alternative construction, we reasoned in *Dodge* that to construe "participant" to include employees under the act "would be to abrogate well-settled employer duties in Texas under the Labor Code." 187 S.W.3d at 529. We focused specifically on the Texas Workers' Compensation Act and its history. *Id.*

In *Keng*, the Supreme Court of Texas construed the meaning of a section under the Workers' Compensation Act. *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000). The court held that, to construe the statute, it could not construe it in a manner that implied restrictions not found in the plain language of the statute. *Id.* In *Dodge*, we relied on this holding to mean that the subject-matter of the statute could not be modified by *any other Texas law* "without express legislative action." 187 S.W.3d

7

at 529 (citing *Keng*, 23 S.W.3d at 349). We reasoned that, "without express legislative action, we cannot conclude that by enacting the Equine Act, the Legislature intended to lessen the consequences imposed on employers who choose not to subscribe to workers' compensation insurance." *Id.* *Keng* does not support this assertion. *See* 23 S.W.3d at 349. Even so, enacting a new set of statutes is "express legislative action."

The Legislature knows how to exempt a law's application to other laws. In fact, the Legislature did just that within the Farm Animals Activities Act. "This chapter does not apply to an activity regulated by the Texas Racing Commission." CIV. PRAC. & REM. § 87.002. Had the Legislature wanted to exclude the act's application to Texas labor laws, it could have done so. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009) (holding courts presume "that lawmakers enact statutes with complete knowledge of existing law"). The fact that the Legislature did not also exclude the act's application to activities regulated by the Labor Code suggests, then, that the Legislature meant not to exclude those activities. *See Sommers ex rel. Ala. & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017) ("[W]e analyze a statute as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded."); *Steering Comms. for Cities Served by TXU Elec. v. Pub. Util. Comm'n*, 42 S.W.3d 296, 302 (Tex. App.—Austin 2001, no

8

pet.) (applying presumption "that the purposeful inclusion of certain terms in a statute implies the purposeful exclusion of terms that are absent").

Since *Dodge*, the Supreme Court of Texas has emphasized that, "[i]f a statute is worded clearly, we must honor its plain language, unless that interpretation would lead to absurd results." *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013). The bar for concluding a plain-faced interpretation of a statute would lead to absurd results "is high[] and should be." *Id.* at 630. "The absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity." *Id.* "Unintended, improvident, inequitable, over-inclusive, or under-inclusive consequences of a statute is not proof of absurd results." *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 214 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Combs*, 401 S.W.3d at 630). Instead, the plain meaning of a statute leads to absurd results only when it is impossible for a rational Legislature to have intended its result. *Combs*, 401 S.W.3d at 629.

It does not lead to an absurd result to exempt injuries sustained from a farm animal from the liability an employer would otherwise face for its employees. Even if there were proof that the Legislature did not intend to include employees in its definition of participants under the act, this is not sufficient. *See id.* at 630 (holding unintended consequence does not rise to level of absurd result); *Choice! Power*, 501 S.W.3d at 214 (holding construing plain language of statute to allow attorneys' fees

9

for individuals and corporations but not for limited partnerships, even if unintentional, did not lead to absurd result).

The most recent case to construe the meaning of "participant" under the act comes from the Fourteenth Court of Appeals. *See Young v. Kim*, 373 S.W.3d 776, 780–81 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In *Young*, a woman worked at some stables, helping to take care of horses that various owners kept there. *Id.* at 778. While the woman was walking one horse to a paddock, the horse kicked her. *Id.* at 779. The owners sought summary judgment on the woman's claims, arguing the application of the act. *See id.* On appeal, the woman cited *Dodge* to argue the act did not apply to her. *Id.* at 780.

The court "disagree[d] that only consumers of equine activities qualify as participants in equine activities as defined in the Equine Act." *Id.* at 780–81. The court observed, "The Equine Act is a comprehensive limitation of liability for equine activities of all kinds." *Id.* at 781. It further concluded that the act "applies to all 'participants.'" *Id.* "We find nothing in the language of the statute mandating that its limitation of liabilities applies only to consumer-oriented equine activities." *Id.* The court pointed out that some of the activities defined under the act, such as assisting in the medical treatment of animals, "does not involve tourists or other consumers of equine activities." *Id.*

The court also cited to law in its analysis recognizing that statutes are construed according to their plain meaning without regard to extrinsic sources and that such sources "may not be used to create an ambiguity in a statute." *Id.* (citing *Fitzgerald v. Advanced Spine Fixation Sys. Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999)).

The court did not reach our reliance on the Workers' Compensation Act as a basis to hold employees were not participants under the Farm Animals Activities Act. *See id.* at 781–82. Instead, it concluded that the injured party was an independent contractor, not subject to this distinction. *Id.* at 782.

The majority's holding does not cure the ills of *Dodge*. The majority holds that Zuniga is not a participant because he does not meet the definition of a "farm animal professional." *See* Civ. Prac. & Rem. § 87.001(5). The problem with this reasoning is that, while it uses the word "professional," the definition of "participant" does not use the phrase "farm animal professional." *See id.* § 87.001(9). The majority, then, is substituting a general word that is present in the definition for a defined phrase that is not present and is basing Zuniga's exemption on this misconstruction.

For support that it can substitute "farm animal professional" for "professional," the majority relies on the proposition that courts "may not judicially amend a statute and add words that are not implicitly contained in the language of

11

the statute." *Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex. 1988). Without explaining its reasoning, the majority is suggesting that the Legislature implicitly meant to write "farm animal professional" when it wrote "professional."

The Supreme Court of Texas has admonished courts to sparingly apply the rule of finding words or phrases "implicitly contained" in a statute. *Fitzgerald*, 996 S.W.2d at 867. "Only truly extraordinary circumstances showing unmistakable legislative intent should divert us from enforcing the statute as written." *Id.* It strains credulity to argue that the Legislature defined a specific phrase, used it in other parts of the act, failed to use it in the place the majority attempts to apply it, and yet made it implicitly clear that it really intended to use the phrase there. To the contrary, the use of the phrase in other parts of the act excludes its application here. "When the Legislature uses a word or phrase in one portion of a statute but excludes it from another, the term should not be implied where it has been excluded." *R.R. Comm'n of Texas v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011). Accordingly, the majority's construction of the definition of "participant" is impermissible.

The majority further relies on *stare decisis* in reaching its decision. As the majority correctly observes, *stare decisis* allows parties to justifiably rely on our past opinions, which promotes predictability in the law. *Martinez v. Hous. McLane Co., LLC*, 414 S.W.3d 219, 223 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

"'[T]he doctrine of stare decisis has its greatest force' in the area of statutory construction." *Willis v. BPMT, LLC*, 471 S.W.3d 27, 33 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Sw. Bell Tel. Co., L.P. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008)). This is because, if the Legislature does not modify the statute to abrogate the court's interpretation, "there is little reason for the court to reconsider whether its decision was correct." *Mitchell*, 276 S.W.3d at 447.

Even so, "the doctrine is not absolute." *Id.* When the reasons for adhering to our prior holding no longer further the interests of efficiency, fairness, and legitimacy and when the general interest will suffer less from a departure in the law than from strict adherence, then we should depart from our prior holding. *Id.* "[S]*tare decisis* does not compel perpetuating an interpretation of [a statute] that . . . cannot be discerned from the text of the statute." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 779 (Tex. 2011). Courts are not "compel[led] . . . to follow a past decision when its rationale does not withstand 'careful analysis.'" *Id.* at 779–80 (quoting *Arizona v. Gant*, 556 U.S. 332, 348, 129 S. Ct. 1710, 1722 (2009)).

For allowing parties to justifiably rely on our past decisions, I have little reason to believe that many parties have come to rely on our holding. *See Martinez*, 414 S.W.3d at 222 (holding *stare decisis* allows parties to justifiably rely on past opinions, promoting predictability in law). I do not expect that anyone has relied on *Dodge* as a reason to put themselves at greater risk of being injured by farm animals

13

than they otherwise would have. *Cf. id.* at 223 (declining to revisit rule concerning injuries at a baseball game when rule had been in effect since early days of baseball and sports teams had good reason to rely on rule). It cannot be said that any party to this case relied on *Dodge*, because this case was transferred from the Austin Court of Appeals. Prior to the transfer, the parties were not subject to the jurisdiction of this Court or bound by our rulings. To the contrary, the trial court rejected Zuniga's family's argument to apply *Dodge* as a ground to deny the motion for summary judgment.

For the Legislature modifying the act without changing the definition of "participant," there is a split of authority on the definition of "participant." *Compare Johnson*, 88 S.W.3d at 731 *with Dodge*, 187 S.W.3d at 530.[3] We have no reason to believe the Legislature meant for both, conflicting definitions to apply. Accordingly, we cannot construe silence by the Legislature as approving one construction over the other.

---

[3] Zuniga's family argues in their reply brief that the Corpus Christi-Edinburg Court of Appeals has since endorsed our holding in *Dodge*. It has not. On appeal after remand, the court recognized our holding in *Dodge*. *Johnston v. Smith*, No. 13-05-00368-CV, 2008 WL 2208865, at *2 (Tex. App.—Corpus Christi May 29, 2008, no pet.) (mem. op.). The court held that its mentioning in the previous opinion that the plaintiff was an independent contractor was not governed by law of the case and the parties were allowed to argue at trial about whether the plaintiff was, in fact, an employee. *Id.* at *2–4. The court did not suggest that this difference would have changed its analysis in the prior opinion that the plaintiff's claims were governed by the act. *See id.*

Because the plain language of the statute does not support our interpretation in *Dodge*, because there is no reason to believe parties have come to rely on *Dodge*, and because there is no indication that the Legislature has approved our interpretation, I would not hold that *stare decisis* prevents this Court from disapproving of *Dodge*. Based on the foregoing, I would overrule our holding in *Dodge* and hold that employees are not excluded from the definition of "participant" under the Farm Animals Activities Act. As a result, I would overrule Zuniga's family's second issue.

In their third issue, Zuniga's family argues that the Waaks failed to establish as a matter of law that they were exempt from the Workers' Compensation Act. Because I believe we should no longer draw a distinction between employees and non-employees under the act, I would not need to reach this point.

In their first issue, Zuniga's family argues that the trial court erred in granting summary judgment on their claims based on the Farm Animals Activities Act. The Waaks moved for partial summary judgment on Zuniga's family's claims, arguing the Farm Animal Activities Act governed Zuniga's family's claims and waived their liability to Zuniga's family. The Waaks recognized in the motion that the act has exceptions to the waiver of liability. They did not seek summary judgment on the application of the waivers. Instead, they asked the court to grant summary judgment on Zuniga's family's claims except to the extent that the claims fell within the

15

exceptions to the Farm Animals Activities Act. Instead, the trial court granted complete summary judgment on the claims. "A judgment that grants more relief than a party is entitled to is subject to reversal." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). A party can only obtain summary judgment on the grounds raised and proved as a matter of law within the motion. *See* Tex. R. Civ. P. 166a(c). Because the Waaks expressly stated they were not challenging the application of any of the exceptions to the waiver of immunity, the trial court erred by granting complete summary judgment on Zuniga's family's claims. *See Lehmann*, 39 S.W.3d at 200. Accordingly, I would sustain Zuniga's family's first issue as it applies to the exceptions to waiver of liability under the Farm Animals Activities Act and otherwise overrule the issue.

I would overrule *Dodge*, uphold the trial court's determination that the Farm Animals Activities Act applies to Zuniga in general, and reverse the trial court's *sua sponte* rendering judgment on the application of the act's exceptions. Because the majority upholds *Dodge* and reverses the trial court's summary judgment in whole, I dissent, in part, and concur in the judgment only, in part.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Keyes, and Higley.

16

Justice Higley, concurring in part and dissenting in part.