**Affirmed and Opinion and Concurring Opinion filed April 22, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00175-CV

---

**MELISSA MARIE LOBUE, Appellant**

**V.**

**TODD H. HANSON D/B/A THE BARN AT FOUR PINES RANCH, Appellee**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-18687**

---

### MAJORITY OPINION

In three issues, appellant Melissa Marie Lobue appeals the trial court's final summary judgment dismissing her claims against appellee Todd H. Hanson based on injuries that she suffered after petting one of his horses kept on his rustic wedding venue property. Hanson filed a motion for summary judgment on various grounds, including the ground that provisions under Chapter 87 of the Texas Civil Practice and Remedies Code (the "Farm Animal Act" or the "Act") preclude her claims against Hanson. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee Todd Hanson owns a fifty-six acre property in Crosby which he rents as a wedding venue called The Barn at Four Pines Ranch. Cattle and two horses were on the ranch at the time of the incident. Within the property a corral fence enclosed the barn where weddings take place. The corral fence contained an opening closed off by a rope.

Robin and Delania selected The Barn at Four Pines as their wedding venue. At some point after they arrived at the venue on their wedding day, they discovered the horses were roaming within the area to be enclosed for patrons.

Roughly an hour before the wedding ceremony, bridesmaid Melissa Lobue walked out to where a group of people were standing on the patio looking at the horses. Lobue walked to the horses and began to pet one of the horses, Shiloh. When she moved to pet the other horse, Shiloh disagreed, and grabbed her by the arm, shook her, and tossed her on the ground. Lobue brought this personal injury suit against Hanson for damages.

*Lobue's Claims*

Lobue's Original Petition raised claims of "premise liability", "negligence" and "negligence per se".[1]

Lobue's premise liability claim alleges that Hanson failed to adequately warn her about the horse, failed to warn of its vicious tendencies, and that by leaving the horse "loose", "unattended" and "in an unsafe place", Hanson breached his duty as owner of the facility to keep the property in reasonably safe condition.

Her negligence claims — based on duties arising from Hanson's

---

[1] Lacking any reference or suggestion of a statutory violation, Lobue does not really assert any negligence per se claim—though as discussed below, the parties litigated the merits of a "strict liability" claim.

responsibilities as a horse-owner — are based on the same alleged conduct, "[f]ailing to warn Plaintiff about the horse's presence and/or vicious tendencies, [f]ailing to maintain the horse in a safe place, [f]ailing to properly handle the horse, [and] [f]ailing to exercise reasonable care to prevent foreseeable harm by the horse."

*Hanson's Answers and Traditional and No Evidence Summary Judgments*

Hanson filed his original answer generally denying Lobue's allegations, and later filed an amended answer which added his limitation of liability defense under the Farm Animal Act. Hanson filed his consolidated Motion for Traditional and No-Evidence Summary Judgment. The traditional portion of the motion sought dismissal of all of Lobue's claims on two grounds: first, the Farm Animal Act precludes Lobue's claims; and second, the assertion that uncontroverted evidence concerning Hanson's knowledge of Shiloh's habits, tendencies and disposition conclusively established the absence of an essential element to Lobue's negligence, strict liability, and premise liability claims.

Hanson's no evidence summary judgment also sought to dispose Lobue's "negligence and negligence handling" claims, challenging the sufficiency of Lobue's evidence (1) "to support a duty on the part of Hanson"; (2) "of a breach of that duty"; (3) and "of the proximate cause element of her negligence/negligent handling claim". With respect to the foreseeability element of proximate cause, Hanson argued that Lobue had no evidence that Hanson either knew of Shiloh's disposition to injure persons or of a dangerous propensity or had constructive knowledge of same.

*Lobue's Response to Hanson's Traditional and No Evidence Summary Judgment*

In her response to Hanson's traditional and no evidence summary judgment motions, Lobue argued that the Farm Animal Act was inapplicable for various

reasons, and, alternatively, even if the Act did apply so do exceptions which operate to remove Hanson's liability-shield. To address Hanson's no-evidence challenges, Lobue attached and referred to her own deposition and depositions of Hanson, Billy Richardson, and the bride and groom. In support of her response, Lobue focused on testimony that the horse roamed without supervision, that the bride and groom had requested the removal of the horse before the incident and the horse was not removed, the lack of warning signs posted on the property, and the lack of a sufficient barrier preventing the horses from entering the enclosed area designated for human guests only.

*Summary Judgment*

On November 28, 2018, trial court issued its final order granting Hanson's Traditional and No Evidence Motion for Summary Judgment "in all things", and ordered that Hanson and Lobue were responsible for their own costs. Lobue timely filed a motion for new trial, which was denied by operation of law and now appeals the trial court's summary judgment.

## II. ISSUES AND ANALYSIS

On appeal, Lobue asserts three issues, tracking each of the trial court's implicit rulings. First, she argues that she raised fact issues as to her negligence, premise liability, and strict liability claims. In her second and third issues, Lobue complains that the trial court erred in implicitly concluding that her claims against Hanson fell within the scope of the Farm Animal Act, and in concluding that none of the statutory exceptions applied.

*Standard of Review*

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of

law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting the motion for summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

### *The Farm Animal Act*

Because the Farm Animal Act could provide a complete bar to all of Lobue's claims, we first address her second and third issues, whether Farm Animal Act applies, and if so whether any the statutory exceptions would permit Ms. Labue's claims to proceed.

The Farm Animal Act precludes liability against "any person, including a farm animal activity sponsor, farm animal professional, livestock producer, livestock show participant, or livestock show sponsor," for "property damage or

damages arising from the personal injury or death of a *participant* in a farm animal activity or livestock show if the property damage, injury, or death results from the dangers or conditions that are an inherent risk of a farm animal activity or the showing of an animal on a competitive basis in a livestock show." Tex. Civ. Prac. & Rem. Code § 87.003 (West 2017). Section 87.003 explicitly identifies five qualifying "dangers or conditions that are an inherent risk of a farm animal activity." *Id.* § 87.003(1)-(5). Hanson's motion identified three of the five statutory inherent risks as implicated by the facts of the case:

> (1) the propensity of a farm animal or livestock animal to behave in ways that may result in personal injury or death to a person on or around it;
>
> (2) the unpredictability of a farm animal's . . . reaction to sound, a sudden movement, or an unfamiliar object, person, or other animal; . . . and
>
> (5) the potential of a participant to act in a negligent manner that may contribute to injury to the participant or another, including failing to maintain control over a farm animal or livestock animal or not acting within the participant's ability

*Id.* § 87.003; *Rodriguez v. Waak*, 562 S.W.3d 570, 576–77 (Tex. App.—Houston [1st Dist.] 2018), *aff'd*, 603 S.W.3d 103 (Tex. 2020). Hanson's traditional motion for summary judgment based on the Act, required that he state the specific grounds and conclusively establish all essential elements of his limitation-of-liability affirmative defense as provided under section 87.003. *See KCM Financial LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). By invoking immunity under 87.003, Hanson was required to conclusively prove (1) Hanson qualified for (or had standing) to seek protection under the Act, (2) Lobue qualified as a "participant", (3) "in a farm animal activity", and (4) that the injury was a result of a statutory inherent risk. *See* Tex. Civ. Prac. & Rem. Code § 87.003. Hanson's summary-judgment motion describes and was supported by unchallenged proof

that Hanson was the owner of property that functions as an event site with horses and cattle kept for non-ranching purposes, and that the activity that gave rise to Lobue's injuries was her approaching and petting two unattended horses. The first and last essential elements were not the basis of significant dispute in summary judgment papers or on appeal. The trial court could fairly conclude that Hanson qualified as "any person" entitled to seek protection under the Act, and that the activity, an unfamiliar person's direct contact with horses, involved an inherent risk. *See Loftin v. Lee*, 341 S.W.3d 352, 354 (Tex. 2011); *See also Johnson v. Smith*, 88 S.W.3d 729, 731 (Tex. App.– Corpus Christi 2002, no pet. h.).

The Act specifically limits liability arising from the personal injury or death of a "participant", defined in relevant part as "a person who engages in [a farm animal] activity, without regard to whether the person is an amateur or professional or whether the person pays for the activity or participates in the activity for free". Tex. Civ. Prac. & Rem. § 87.001(9)(A). The Act generally applies to participants at shows and events but excludes ranch employees in the course of their employment. *See Waak v. Rodriguez*, 603 S.W.3d 103, 109–10 (Tex. 2020).

"Farm animal," is defined in the statute to include "an equine animal", another defined term, which itself includes "horse, pony, mule, donkey, or hinny." 87.001(2), (2-a)(A).

"Farm animal activity," includes a number qualifying activities. Hanson argues that the following apply: an "*event. . .*that involves farm animals," "riding, inspecting, evaluating, *handling*, loading or unloading a farm animal belonging to another," and "*an informal farm animal activity*, including a ride, trip, or hunt that is sponsored by a farm animal activity sponsor." *Id.* § 87.001(3)(A), (D), (E). The phrase "engages in a farm animal activity" means:

riding, handling, training, driving, loading, unloading, assisting in the

medical treatment of, being a passenger on, or assisting a participant or sponsor with a farm animal. The term includes management of a show involving farm animals. The term does not include being a spectator at a farm animal activity unless the spectator is in an unauthorized area and in immediate proximity to the farm animal activity."

*Id.* § 87.001 (1).

Lobue contends that she was not a participant because she was not engaged in a farm animal activity, therefore rendering her claims outside the scope of the statute.[2]    Conversely, Hanson describes Lobue's injuries as occurring while "handling" Shiloh, and as part of an "event" involving a farm animal.

The word "handling," is used within the statutory meaning of two above defined-phrases, "[f]arm animal activity" and "[e]ngaged in farm animal activity." In *Waak*, the Supreme Court explained that "handling" (like the words "loading" and "unloading" as used in the statute) "obviously ha[s] meaning *outside the ranching context*," 603 S.W.3d at 110, and concluded that the type of handling addressed by the Farm Animal Act is not the same handling that a ranch hand typically engages in.  Handling is not defined in the statute.

If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997).  We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose.  *See id*.  The Oxford Dictionaries define "[h]andle," to mean "feel or manipulate with the hands," "control someone or something", or "deal with (someone or something)".[3]  The U.S. Department of Agriculture defines

---

[2] There is no dispute that Shiloh, the offending animal described in Lobue's claims is a horse, that a horse falls within in the statute's definition of "equine animal", and that in turn, an "an equine animal" is a "farm animal".  87.001(2), (2-a)(A).

[3] See Oxford Online Dictionary, "handle", https://www.lexico.com/definition/handle.

"[a]nimal handling" as "a term that describes how humans work with, respond to, and interact with animals within their surroundings." We cannot conclude that the trial court would have erred if it found after reviewing Lobue's own testimony describing her interaction with Shiloh, that when she was petting Shiloh, she was "handling" him in this literal sense of the term, and accordingly that she was a participant in a farm animal activity. *See Waak*, 603 S.W.3d at 109–10; *See Young v. McKim*, 373 S.W.3d 776, 781 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) *citing Johnson v. Smith,* 88 S.W.3d 729, 732 (Tex. App.—Corpus Christi 2002, no pet.) (finding that under the predecessor statute, plaintiff leading a stallion to its paddock fell within the common usage of "handling," "training" and "assisting in the medical treatment of an equine.").

The trial court would not have erred in finding that Robin and Delania's wedding event qualifies as an "event. . .that involves farm animals," and therefore a fulfills the meaning of a "farm animal activity." The venue's website mentions as an attraction the feature of livestock on the property. And although Robin and Delania did not elect of have the pictures-with-horses feature a part during their wedding, at some weddings at Four Pines Ranch, guests take pictures with the horses. Hanson testified that as part of the contract with the bride and groom, he advised that they were responsible for warning the guests not to approach the animals. Thus, even if the wedding were to take place as intended with animals in the backdrop, the parties contemplated possible human interaction with the animals.

The trial court did not err in its implicit finding that the Farm Animal Act applied to Lobue's claims against Hanson arising from injuries she suffered after petting Shiloh because at the time Lobue was a person engaging in a farm animal activity and was a "participant" within the meaning of the Act.

9

In her opening brief, Lobue makes passing reference to the exclusion of some "spectators" from the Act's definition of "engages in a farm animal activity":

> Furthermore, [Lobue] is not considered a participant under The Texas Farm Animal Liability Act. "Engages in a farm animal activity" means riding, handling, training, driving, loading, unloading, assisting in the medical treatment of, being a passenger on, or assisting a participant or sponsor with a farm animal. [Tex. Civ. Prac. & Rem. Code. § 87.001.] The term includes management of a show involving farm animals. *Id.* **The term does not include being a spectator at a farm animal activity unless the spectator is in an unauthorized area and in immediate proximity to the farm animal activity.** Here, [Lobue] did none of the above, thus she is not considered a participant under the Act.

(emphasis added).

Construing Lobue's brief liberally, we cannot conclude that by simply stating verbatim the third sentence contained in the statutory definition of "engages in a farm animal activity", which operates to exclude some "spectators", that Lobue adequately briefed any argument that she was a "spectator" at all, much less in a manner that excluded her from the definition "engages in a farm animal activity" or rendered her a non-participant, or that the trial court erred in its implicit finding that she was not a "spectator". Tex. R. App. P. 38.1(i); *Fox v. Alberto*, 455 S.W.3d 659, 663, n.1 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

We next consider whether Lobue raised a fact issue on either of the two exceptions to the liability shield that she raised in her summary judgment response. First, Labue argues that Hanson failed to post warnings in violation of section 87.005, which requires that a farm animal professional or livestock show sponsor is required to post warnings in their contracts and at their facilities. However,

10

section 87.005 is not in fact a statutory exception to the liability shield.[4]  Rather, while the provision mandates signage, it is without any defined penalty for non-compliance.   Lobue has not shown and we have not found authority that converts the failure to provide the warning into a basis for removing the liability protection afforded by the Act.

Second, Lobue argues that section 87.004(2) applies, which provides that limitation of liability does not apply if:

> (2) the person provided the farm animal or livestock animal and the person did not make a reasonable and prudent effort to determine the ability of the participant to engage safely in the farm animal activity or livestock show and determine the ability of the participant to safely manage the farm animal or livestock animal, taking into account the participant's representations of ability;

Though there is no evidence suggesting that Hanson made any efforts to determine any of the wedding participants' abilities to engage safely with the horses, the exception would not apply because Lobue did not provide evidence that Hanson's failure to make an ability-assessment of Lobue was the cause of her damages.[5]   The Supreme Court has made clear that the exception is limited to situations were "the failure to make the required determination is itself the cause of the damage."  *Loftin v. Lee*, 341 S.W.3d 352, 359 (Tex. 2011).  Lobue failed to assert this theory in her petition or put forth the evidence of the causal relationship.

---

[4] We note that the Act's exceptions are listed in section 87.004 whereas the warning notice provision is in the next subsection, 87.005.

[5] At best, Lobue asserted in her summary judgment response that "Todd Hanson failed to make reasonable efforts to determine whether the wedding guests had the knowledge and ability to safely interact unsupervised with the horses at his venue." But even in her response, Lobue did not allege, or put forth evidence of a causal connection.

### III. CONCLUSION

Because Lobue has not shown that the trial court erred in granting Hanson's summary-judgment motion under the theory that her claims were precluded under the Farm Animal Act, we overrule Lobue's second and third complaints and affirm the trial court's judgment.

/s/ Randy Wilson
    Justice

Panel consists of Justices Jewell, Spain, and Wilson (Spain, J., concurring).